## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

WILDBIRD LLC,

     *Plaintiff*,

     v.

WILDRIDE B.V., and WILDRIDE USA CORP.,

     *Defendants*.

Civil Action No: _____

## COMPLAINT

Pursuant to FED. R. CIV. P. 8(a), Plaintiff Wildbird LLC, by and through its undersigned counsel, as and for its Complaint against Defendants, Wildride B.V. ("Wildride Netherlands"), and Wildride Corp. USA ("Wildride USA," together with Wildride Netherlands, "Defendants") alleges as follows based on knowledge of its own actions and on information and belief as to all other matters (unless indicated otherwise herein):

## NATURE OF THE ACTION

1.     Defendants' recent expansion into the United States is causing actual confusion about whether Plaintiff is the source of Defendants' "WILDRIDE"-brand baby and toddler carriers or whether Defendants and their products have some type of association with or connection to Plaintiff and its "WILDBIRD" brand of children's accessories and clothing.

2.     For more than a decade, Plaintiff has been advertising, offering for sale, and selling high-quality, award-winning accessories and clothing for children under its WILDBIRD trademarks and brand throughout the United States. Products offered under Plaintiff's WILDBIRD marks and brand include, for example, baby carriers.

1

3.      On information and belief, Defendants expanded their WILDRIDE brand into the United States in or about May 2025.  From May 21-23, 2025, Plaintiff and Defendants attended the ABC Kids Expo in Las Vegas, Nevada.  This was the first time that Plaintiff was aware of Defendants using their WILDRIDE mark in the United States.  The use of Defendants' WILDRIDE mark at the 2025 ABC Kids Expo caused actual confusion.  In June 2025, Defendants' WILDRIDE mark confused buyers for a well-known retailer in the United States.  This month, Plaintiff began to notice that consumers are confusing Plaintiff and Defendants on social media.

4.      To protect the public from additional confusion caused by the use of Defendants' WILDRIDE mark, Plaintiff brings this Complaint against Defendants for: (i) federal trademark infringement in violation of 15 U.S.C. § 1114(1); (ii) federal false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A);  (iii) dilution and injury to business reputation in violation of NEW YORK GENERAL BUSINESS LAW § 360-*l*; (iv) trademark infringement in violation of New York's common law; and (v) unfair competition in violation of New York's common law.

5.      To prevent irreparable harm to the reputation and goodwill of Plaintiff's carefully curated WILDBIRD brand and marks, Plaintiff also seeks preliminary and permanent injunctive relief against the use of Defendants' WILDRIDE mark.

## THE PARTIES

6.      Plaintiff is a limited liability company organized and existing under the laws of the State of Utah.

7.      According to documents filed with the United States Patent and Trademark Office ("PTO"), Defendant Wildride B.V. is a Netherlands besloten vennootschap with a principal place of business located at Donkere Spaarne 44, 2011 JH, Haarlem NETHERLANDS.  *See* **Exs. 1-2**.

8.     According to the website us.wildridecarrier.com, Defendant Wildride USA Corp. is a Delaware corporation.  *See* **Exs. 3-4**. On information and belief, Defendant's principal place of business is located at 228 East 45th Street, Suite 9E, New York, New York 10017.  *See id*.

## JURISDICTION AND VENUE

9.     The claims for trademark infringement, false association, false designation of origin, and unfair competition, respectively, asserted in Counts I and II, *infra*, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original and subject-matter jurisdiction over Counts I and II pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C § 1121(a).

10.     The claims for dilution and injury to business reputation, trademark infringement, and unfair competition, respectively, asserted in Counts III-V, *infra*, arise under New York statutory and common law, and are so related to the federal claims asserted in Counts I and II, *infra*, that they form part of the same case or controversy.   Accordingly, this Court has supplemental jurisdiction over Counts III-V pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

11.     Defendants have purposefully availed themselves of the privilege of transacting business in this District.  According to the PTO's database, Wildride Netherlands owns the trademark "WILDRIDE."  *See also* Exs. 1-2.  On information and belief, Defendant Wildride USA is a subsidiary, affiliate, and/or licensee of Defendant Wildride Netherlands.  *See*, *e.g.*, Exs. 3-4. Accordingly, any use of the WILDRIDE mark by Wildride USA in the United States, including within this District, inures to the benefit of Wildride Netherlands.  Wildride USA uses the WILDRIDE trademark in this District, where it maintains its principal place of business.  *See*, *e.g.*, Exs. 3-4.  Plaintiff's claims arise out of and relate to Defendants' transactions of business, and tortious acts committed in this District, namely, the use of the WILDRIDE trademark.  Based on

the foregoing, this Court has long-arm jurisdiction over Defendants pursuant to NEW YORK CIVIL PRACTICE LAW AND RULES § 302(a)(1)-(2).

12.     Defendant Wildride B.V. also is subject to nationwide personal jurisdiction under FED. R. CIV. P. 4(k).  If Defendant Wildride B.V's use of the WILDRIDE mark in this District (via Wildride USA) does not subject it to personal jurisdiction in the State of New York, then, on information and belief, Defendant Wildride B.V.—a Netherlands entity—would not be subject to personal jurisdiction in any other State in the United States.  Subjecting Defendant Wildride B.V. to nationwide jurisdiction would comport with the United States Constitution and laws. For example, Defendant Wildride B.V. is using the WILDRIDE marks (via Wildride USA) to advertise, promote, and offer for sale products to consumers throughout the United States in United States Dollars.  *See*, *e.g.*, Exs. 3-4.  Accordingly, it is reasonable for Defendant Wildride B.V. to have to answer for its unlawful conduct throughout the United States.

13.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

14.     Defendants are subject to personal jurisdiction in this District. Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

### I.  Plaintiff

15.     Founded in 2014 by first-time parents, Tayler and Nate Gunn, WILDBIRD is an award-winning brand of children and parental accessories and clothing.

16.     Wildbird's founders felt the nurturing and protective nature of a mother bird.  As part of that nurturing, Tayler and Nate wanted to keep their newborn child close enough to their bodies to soothe their child with their breathing.  Unable to "wear" their newborn child, Tayler

4

and Nate developed a ring-sling carrier, which allowed them to carry/wear their child.   A representative example of a WILDBIRD-brand ring sling is below:



### A.  Plaintiff's WILDBIRD-Brand Products

17.   As of 2014, on information and belief, there were no baby brands in the United States that had "bird" in their name.  That fact, combined with the nurturing and protective nature of a mother bird that Tayler and Nate felt for their newborn, led them to adopt Wildbird as the name of their company.

18.   Since Wildbird's launch in 2014, it has expanded its product offerings from ring sling to include a full range of accessories and clothing for children and their parents.

19.   Today, Wildbird offers: (i) ring slings; (ii) "wrap" baby carriers; (iii) pajamas; (iv) sleep sacks; (v) pregnancy pillows; (vi) playmats; (vii) blankets; (viii) pillows; (ix) crib sheets; (x) swaddles; (xi) hats; (xii) teethers; and (xiii) soft-structured carriers and backpack-style carriers.

20.   Wildbird currently plans to expand its product offerings to include: (i) additional carriers; (ii) stroller wagons; (iii) bouncers; (iv) bath products; (v) nursery products; (vi) additional clothing; and (vii) play items.

**B.  Plaintiff's WILDBIRD Trademarks**

21.    To identify and distinguish WILDBIRD-brand products in the marketplace, it uses (i) the "WILDBIRD" word mark (the "WILDBIRD Word Mark") and (ii) the inset logo (the "WILDBIRD Logo," together with the WILDBIRD word mark, the "WILDBIRD Marks"):



22.    To strengthen Wildbird's common-law trademark rights in and to its WILDBIRD Marks, it registered its WILDBIRD Word Mark with the PTO.    Wildbird owns U.S. Trademark Registration No. 7,798,495, which covers the WILDBIRD Word Mark in the following International Classes and for the following goods and services:

a.    18: Back packs for carrying babies; baby carriers worn on the body;

b.    24: Baby bedding, namely, swaddling blankets, fitted crib sheets, crib skirts, blankets, pillow covers;

c.    25: Baby pajamas; toddler pajamas; sleep gowns, sleepwear for babies in the nature of sleepsacks;

d.    28: Play mats for toddlers and babies; and

e.    35: On-line retail store services featuring baby related consumer products, namely baby carriers, baby pajamas, baby bedding, baby playmats, toddler pajamas, and baby sleep sacks.

23.    Attached hereto as **Exhibit 5** is a true and correct copy of the Registration Certificate for U.S. Trademark Reg. No. 7,798,495 (the "'459 Registration").

24.    The '459 Registration is valid, subsisting, and on the Principal Trademark Register. Accordingly, the '459 Registration is *prima facie* evidence of Wildbird's ownership of the WILDBIRD Word Mark; the validity of the WILDBIRD Word Mark when used for the goods and services specified in the '459 Registration; the validity of the registration of the WILDBIRD Word

Mark; and Wildbird's exclusive right to use the WILDBIRD Word Mark throughout the United States for, on, and/or in connection with the goods and services specified in the '459 Registration.

25.    To strengthen Wildbird's common-law trademark rights in and to its WILDBIRD Marks, it has applied to register its WILDBIRD Logo as a mark with the PTO.   Wildbird owns U.S. Trademark Application Serial No. 99/068,040, which seeks registration of the WILDBIRD Logo in the following International Classes and for the following goods and services:

a.    10: Teethers;

b.    18: back packs for carrying babies; baby carriers worn on the body;

c.    20: Maternity pillows; baby pillows;

d.    24: Baby bedding, namely, swaddling blankets, fitted crib sheets, blankets, pillow covers;

e.    25: baby pajamas; toddler pajamas; sleep gowns; sleepwear for babies in the nature of sleepsacks; robes; sunhats;

f.    28: Play mats for toddlers and babies; and

g.    35: On-line retail store services featuring baby related consumer products, namely back packs for carrying babies, baby carriers worn on the body, baby bedding, namely, swaddling blankets, fitted crib sheets, blankets, pillow covers, baby pajamas, toddler pajamas, sleep gowns, sleepwear for babies in the nature of sleepsacks, robes, sun hats, play mats for toddlers and babies, teethers, maternity pillows and baby pillows.

26.    Attached hereto as **Exhibit 6** is a true and correct copy of the U.S. Trademark Application Serial No. 99/068,040.

27.    Wildbird monitors the marketplace and enforces its Marks against infringers.  For example, Plaintiff sent a cease-and-desist letter to a company that formerly did business as "WildBird Designs."

**C. WILDBIRD-Brand Products Offered Under the WILDBIRD Marks Enjoy Widespread Consumer Recognition and Goodwill**

28.     Since 2014, Wildbird has spent substantial time, money, and effort on creating a unique association in consumers' minds in the United States between products offered under the WILDBIRD Marks, on the one hand, and Plaintiff, on the other hand.

29.     For example, Wildbird spends approximately $6 million a year on advertising and promoting products under its WILDBIRD Marks.   These efforts, include, for example: (i) advertising on Wildbird's website; (ii) advertising on Wildbird's social-media accounts; and (iii) advertising via social-media influencers.

30.     Consumers throughout the United States receive widespread exposure to Plaintiff's WILDBIRD Marks and Plaintiff's products offered the WILDBIRD Marks.

31.     For example, Wildbird prominently uses and displays its WILDBIRD Marks on its social-media accounts, which, combined, have more than half-a-million followers.

32.     Plaintiff's products offered under its WILDBIRD Marks have received widespread, unsolicited media coverage throughout the United States in national publications, such as: *Vogue*; *Glamour*; *Strategist*; and *The Bump*.  Plaintiff's products offered under its WILDBIRD Marks also have appeared on the widely watched *Today* Show.

33.     Consumers also receive widespread exposure to Plaintiff's products offered under Plaintiff's WILDBIRD Marks throughout the United States in national retailers, such as: Target; Babylist; and Nordstrom; as well as on Amazon.com.

34.     Plaintiff's products offered under its WILDBIRD Marks have been a commercial success.   For example, Plaintiff's annual revenue on sales of products offered under the WILDBIRD Marks exceeds $20 million.

35.    Plaintiff and its products offered under its WILDBIRD Marks also have received critical acclaim.  For example, in 2025, Plaintiff's WILDBIRD-brand Aerial Buckle Wrap received Parents.com's "Best Baby Wrap" Award.

36.    As a result of Wildbird's advertising and promotional efforts, consumers' widespread exposure to products offered under the WILDBIRD Marks, the sales success of products offered under the WILDBIRD Marks over the past decade, and awards, the WILDBIRD Marks are distinctive and strong identifiers of and for Plaintiff and its products offered under the WILDBIRD Marks.

## II.    Defendants and Their Infringing WILDRIDE Trademarks

37.    According to the PTO's database, Defendant Wildbird B.V. owns U.S. Trademark Application Serial No. 79/375,825, which seeks registration of the word mark WILDRIDE in, *inter alia*, the following International Classes for the following goods and services:

a.    18: Baby and children carriers worn on the body; pouch baby and infant carriers; baby and infant carriers; sling bags for carrying babies and infants; slings for carrying babies and infants; baby and infant carrying bags, and

b.    35: Retailing services and wholesale services featuring baby and children carriers worn on the body, pouch baby and infant carriers, baby and infant carriers, carrier bags, slings for carrying babies and infants, sling bags for carrying babies and infants; shop services, business intermediary services, selling and buying and business advice relating to baby and children carriers worn on the body, pouch baby and infant carriers, baby and infant carriers, carrier bags, slings for carrying babies and infants, sling bags for carrying babies and infants.

38.    Attached hereto as **Exhibit 1** is a true and correct copy of U.S. Trademark Application Serial No. 79/375,825 (the "'825 Application").

39.    According to the PTO's database, Defendant Wildbird B.V. owns U.S. Trademark Application Serial No. 98/558,373, which seeks registration of the word mark WILDRIDE in International Class 18 for Baby and children carriers worn on the body; pouch baby and infant

carriers; baby and infant carriers worn on the body; sling bags for carrying babies and infants; slings for carrying babies and infants; baby and infant carrying bags.

40.    Attached hereto as **Exhibit 2** is a true and correct copy of U.S. Trademark Application Serial No. 98/558,373 (the "'373 Application").

41.    The WILDRIDE word mark, as set forth in the '825 Application and the '373 Application, is referred to hereinafter the "WILDRIDE Word Mark."

42.    In the '825 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark in, *inter alia*, the same International Classes covered by Plaintiff's '459 Registration for the WILDBIRD Word Mark, namely, 18 and 35.  In the '825 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark for goods and services that are identical to goods and services covered by Plaintiff's '459 Registration, namely, baby carriers and retail store services concerning, among other things, baby carriers.

43.    In the '373 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark in same International Class covered by Plaintiff's '459 Registration for the WILDBIRD Word Mark, namely, 18.  In the '373 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark for goods that are identical to goods covered by Plaintiff's '459 Registration, namely, baby carriers.

44.    Wildride B.V. based the '825 Application on an International Registration Date of May 12, 2023 for International Registration No. 1743929.  In the '373 Application, Wildride B.V. claimed a first-use date of the WILDRIDE Word Mark of January 2021.  As set forth in the '459 Registration, Plaintiff began using its WILDBIRD Word Mark in United States commerce in November 2014 for baby carriers and retail store services.  Accordingly, Plaintiff has trademark priority over Defendants in the United States.

45.     On information and belief, Defendant Wildride B.V. licenses its WILDRIDE Word Mark and the inset logos (collectively, the "Infringing WILDRIDE Marks") to Defendant Wildride USA to use in United States commerce:



46.     On information and belief, Defendant Wildride USA owns, operates, and is responsible for the content displayed on the website located at https://us.wildridecarrier.com ("Defendants' U.S. Website").

47.     Defendants' U.S. Website displays the Infringing WILDRIDE Marks.

48.     Defendants' Infringing WILDRIDE Marks, including as used and displayed on Defendants' U.S. Website, create the same and/or a confusingly similar overall impression as Plaintiff's WILDBIRD Marks in the marketplace.  For example, on information and belief, the prefix "Wild" is the dominant portion of the parties' marks and logos and is what leaves an impression on consumers.   The parties' marks and logos also sound nearly identical when spoken.

49.     Defendants are using their Infringing WILDRIDE Marks in United States commerce in connection with advertising, offering for sale, and selling products that are identical to Plaintiff's products, namely, baby carriers.   For example, nordstrom.com advertises WILDRIDE-brand baby carriers for sale.  *See* **Ex. 7**.  Nordstrom also sells Plaintiff's WILDBIRD-brand products.

50.    Defendants are using their Infringing WILDRIDE Marks in United States commerce in connection with advertising, offering for sale, and selling toddler carriers, which, on information and belief, are within Plaintiff's zone of natural expansion.  For example, given that the toddler stage comes after the baby stage, and given that Plaintiff advertises, offers for sale, and sells baby carriers under its WILDBIRD Marks, consumers expect Plaintiff to be the source of a toddler carrier advertised, offered for sale, and sold under a "WILD"-formative mark that creates the same and/or a confusingly similar overall impression as Plaintiff's WILDBIRD Marks.

**III.    Defendants' Infringing WILDRIDE Marks Are Causing Actual Confusion**

51.    On information and belief, Defendants began using their Infringing WILDRIDE Marks in the United States in or about May 2025.  For example, the earliest capture of Defendants' U.S. Website on the WayBack Machine is May 19, 2025.  *See* **Ex. 8**.  Despite Defendants' recent entrance into the United States marketplace, Defendants' use of the Infringing WILDRIDE Marks already is causing actual confusion.

52.    From May 21-23, 2025, Plaintiff attended the ABC Kids Expo in Las Vegas, Nevada.  Defendants also attended the 2025 ABC Kids Expo.  This was the first time that Plaintiff was aware of Defendants using their Infringing WILDRIDE Marks in the United States.  On Day 2 of the ABC Kids Expo, a buyer for Nordstrom asked Plaintiff's representative at the Expo if Plaintiff's WILDBIRD brand was affiliated with Defendants' WILDRIDE brand.  On Day 3 of the ABC Kids Expo, multiple suppliers confused Plaintiff's WILDBIRD brand with Defendants' WILDRIDE brand.  For example, one supplier said to Plaintiff's representative at the Expo: "oh, yes; I saw your booth"—but they were referring to Defendants' booth.  As another example, one supplier asked Plaintiff's representative at the Expo: "You are Wildride, yes"?

53.     In June 2025, Plaintiff and Defendants attended a brand showcase for Nordstrom, which included only 6-to-8 other brands.  At least four category leads for Nordstrom's stores throughout the United States asked Plaintiff's representative at the showcase if Plaintiff's WILDBIRD brand was affiliated with Defendants' WILDRIDE brand or if Plaintiff's WILDBIRD brand was the same as Defendants' WILDRIDE brand.

54.     This month, Plaintiff began to notice for the first time that consumers are confusing Plaintiff and Defendants on social media.  For example, as shown in the inset image, consumers are "tagging" Plaintiff's Instagram account when posting about Defendants' products:



55.     Given that Defendants' recent entrance into the United States marketplace has already caused actual confusion, Plaintiff seeks judicial intervention to prevent any further confusion among the public and irreparable harm to Plaintiff's carefully curated WILDBIRD Marks and brand.   To that end, Plaintiff asserts the following claims for relief, as well as seeks preliminary and permanent injunctive relief against Defendants' use of the Infringing WILDRIDE Marks.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*(Trademark Infringement Under 15 U.S.C. § 1114(1))*
*(Infringement of Plaintiff's Federally Registered WILDBIRD Word Mark)*

56.     Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-55 of the Complaint as though set forth fully herein.

57.     The First Claim for Relief is a claim for federal trademark infringement under 15 U.S.C. § 1114(1).

58.     Plaintiff is the exclusive owner of the federally registered WILDBIRD Word Mark.

59.     Plaintiff has the exclusive right to use the federally registered WILDBIRD Word Mark in United States commerce for the goods and services specified in the '495 Registration, which include baby carriers.

60.     Plaintiff's exclusive rights in and to the federally registered WILDBIRD Word Mark predate any rights that Defendants could establish in and to any of the Infringing WILDRIDE Marks.

61.     Plaintiff's federally registered WILDBIRD Word Mark is inherently distinctive of and for goods and services specified in the '459 Registration.  For example, the PTO registered the WILDBIRD Word Mark without proof of secondary meaning.  As another example, the word "wild bird" is not a commonly used term in the children's accessories-and-clothing market.  As a further example, the word "wild bird" does not describe any qualities of the children's accessories and clothing that Plaintiff offers under its WILDBIRD Marks.

62.     Plaintiff's federally registered WILDBIRD Word Mark identifies Plaintiff as the exclusive source of products offered under the WILDBIRD Word Mark in the marketplace (including, without limitation, the goods and services specified in the '459 Registration) and,

therefore, the WILDBIRD Word Mark has acquired distinctiveness and is a commercially strong mark.

63.     Defendants use the Infringing WILDRIDE Marks in United States commerce.

64.     Defendants' Infringing WILDRIDE Marks create the same and/or a confusingly similar overall impression in the marketplace as Plaintiff's federally registered WILDBIRD Word Mark.

65.     Defendants are using the Infringing WILDRIDE Marks in commerce to advertise, promote, offer for sale, and sell goods and services that are identical to, compete with, and/or overlap with the goods and services that Plaintiff advertises, promotes, offers for sale, and sells under Plaintiff's federally registered WILDBIRD Word Mark.

66.     Defendants' use of the Infringing WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, has caused actual confusion about whether Plaintiff is Defendant (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendants' products or services, and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendants.

67.     Defendants' use of the Infringing WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is likely to continue causing consumer confusion, mistake, and/or deception about whether Plaintiff is Defendants (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendants' products or services, and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendants.

68.     Based on Plaintiff's longstanding and continuous use of its WILDBIRD Word Mark in United States commerce, as well as the federal registration of that Word Mark, Defendants

had actual and/or constructive knowledge of Plaintiff's superior rights in and to the WILDBIRD Word Mark when Defendants began using the Infringing WILDRIDE Marks in United States commerce.

69.     Upon information and belief, Defendants adopted and use the Infringing WILDRIDE Marks in the United States in furtherance of Defendants' willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, and commercial success of products that Plaintiff offers under its federally registered WILDBIRD Word Mark.

70.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the Infringing WILDBIRD Marks, to which Defendants are not entitled at law or in equity.

71.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

72.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

73.     Plaintiff has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
*(False Association, False Designation of Origin, and Unfair Competition Under 15 U.S.C.*
*§ 1125(a)(1)(A))*
*(Use of the Infringing WILDRIDE Marks)*

74.     Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-73 of the Complaint as though set forth fully herein.

75.     Plaintiff is the exclusive owner of each of the WILDBIRD Marks.

76.     Plaintiff has the exclusive right to use the WILDBIRD Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling children's clothing and accessories.

77.    Plaintiff's exclusive rights in and to the WILDBIRD Marks predate any rights that Defendants could establish in and to any of the Infringing WILDRIDE Marks.

78.    Plaintiff's WILDBIRD Marks are inherently distinctive of and for the goods and services that Plaintiff offers under its WILDBIRD Marks.

79.    Plaintiff's WILDBIRD Marks identify Plaintiff as the exclusive source of products offered under the WILDBIRD Marks in the marketplace (including, without limitation, children's clothing and accessories) and, therefore, the WILDBIRD Marks have acquired distinctiveness and are commercially strong marks.

80.    Defendants use the Infringing WILDRIDE Marks in United States commerce.

81.    Defendants' Infringing WILDRIDE Marks create the same and/or a confusingly similar overall impression in the marketplace as Plaintiff's WILDBIRD Marks.

82.    Defendants are using the Infringing WILDRIDE Marks in commerce to advertise, promote, offer for sale, and sell goods and services that compete and/or directly overlap with the goods and services that Plaintiff advertises, promotes, offers for sale, and sells under Plaintiff's WILDBIRD Marks.

83.    Defendants' use of the Infringing WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, has caused actual confusion about whether Plaintiff is Defendants (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendants' products or services, and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendants.

84.    Defendants' use of the Infringing WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is likely to continue causing consumer confusion, mistake, and/or deception about whether

Plaintiff is Defendants (or vice versa), whether Plaintiff approves of, endorses, and/or sponsors Defendants products or services, and/or whether there is some type of affiliation, association, and/or connection between Plaintiff and Defendants.

85.    Based on Plaintiff's longstanding and continuous use of its WILDBIRD Marks in United States commerce, as well as the federal registration of the WILDBIRD Word Mark and application to register the WILDBIRD Logo, Defendants had actual and/or constructive knowledge of Plaintiff's superior rights in and to the WILDBIRD Marks when Defendant began using the Infringing WILDRIDE Marks in United States commerce.

86.    Upon information and belief, Defendants adopted and use the Infringing WILDRIDE Marks in the United States in furtherance of Defendants' willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, and commercial success of products that Plaintiff offers under its WILDBIRD Marks.

87.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the Infringing WILDBIRD Marks, to which Defendants are not entitled at law or in equity.

88.    Upon information and belief, Defendants' acts and conduct complained of herein constitute false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

89.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

90.    Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
*(Dilution and Injury to Business Reputation Under New York General Business Law § 360-l)*
*(Dilution of, Injury to Plaintiff's WILDBIRD Marks)*

91.     Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-90 of the Complaint as though set forth fully herein.

92.     The Third Claim for Relief is a claim for dilution and injury to the business reputation of Plaintiff's WILDBIRD Marks under NY GBL § 360-*l*.

93.     Plaintiff's WILDBIRD Marks were distinctive before and at the time Defendants began using the Infringing WILDRIDE Marks in United States and New York commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, children's accessories and clothing).

94.     Defendants' use of the WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, children's accessories and clothing) is likely to dilute and/or injure the distinctive quality of the WILDBIRD Marks, such that the WILDBIRD Marks' established selling power and value will be whittled away.

95.     Defendants' use of the WILDRIDE Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, children's accessories and clothing) is likely to dilute and/or injure the distinctive quality of the WILDBIRD Marks, such that the WILDBIRD Marks' ability to identify Plaintiff as the exclusive source of products offered under the WILDBIRD Marks (including, without limitation, children's accessories and clothing) will be whittled away.

96.     Upon information and belief, Defendants' acts and conduct complained of herein constitute dilution and injury to business reputation in violation of NY GBL § 360-*l*.

97. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

98. Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
(*Trademark Infringement Under New York Common Law*)
(*Infringement of Plaintiff's WILDBIRD Marks*)

99. Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-98 of the Complaint as though set forth fully herein.

100. The Fourth Claim for Relief is a claim for trademark infringement under New York common law.

101. Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of New York common law.

102. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

103. Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
(*Unfair Competition Under New York Common Law*)
(*Use of the Infringing WILDRIDE Marks*)

104. Plaintiff repeats and incorporates by reference the statements and allegations in Paragraphs 1-103 of the Complaint as though set forth fully herein.

105. The Fifth Claim for Relief is a claim for unfair competition under New York common law.

106. Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition in violation of New York common law.

107.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

108.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, based on the foregoing, Plaintiff hereby prays that this Court:

A.    Enter an Order, finding in Plaintiff's favor on each Claim for Relief in the Complaint;

B.    Pursuant to 15 U.S.C. § 1116:

1.    Preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers, and all persons and entities in active concert and participation with them, from using the Infringing WILDRIDE Marks (or any other mark(s) confusingly similar to Plaintiff's WILDBIRD Marks) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, children's accessories and clothing, and

2.    Ordering Defendants to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

C.    Pursuant to 15 U.S.C. § 1117:

1.    Order Defendants to provide Plaintiff with an accounting of all manufacture, distribution, and sale of products under the Infringing WILDRIDE Marks, as well as Defendants' profits derived therefrom, such amounts to be determined at trial;

2.    Order Defendants to pay to Plaintiff all of Defendants' profits derived from the sale of all goods and services offered under the Infringing WILDRIDE Marks, such amounts to be determined at trial;

3.      Award Plaintiff actual damages and treble damages caused by Defendants'
infringement of Plaintiff's WILDBIRD Marks and other unlawful conduct alleged herein, such
amounts to be determined at trial;

4.      Declare that Plaintiff is the "prevailing party" in this action for purposes of 15
U.S.C. § 1117(a);

5.      Declare that this is an "exceptional" case within the meaning of 15 U.S.C.
§ 1117(a); and

6.      Award Plaintiff its costs and reasonable attorneys' fees incurred in this matter;

D.      Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and
materials within the possession, custody, and control of Defendants that bear, feature, and/or
contain the Infringing WILDRIDE Marks (or any other mark(s) confusingly similar to Plaintiff's
WILDBIRD Marks);

E.      Award Plaintiff pre-judgment and post-judgment interest against Defendants; and

C.      Award to Plaintiff any further relief that this Court deems just and equitable.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable in this action pursuant to FED R.
CIV. P. 38(b) and 38(c).

Dated: July 22, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas (JT1016)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9219
Email: jonathan.thomas@gtlaw.com

Molly R. Littman-Johnson (to apply *pro hac vice*)
90 South 7th St., Suite 3500
Minneapolis, Minnesota 55402
Tel:  (612) 259-9669
Fax: (612) 259-9700
Email: Molly.Littman@gtlaw.com

*Attorneys for Plaintiff Wildbird LLC*