**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

WILDBIRD LLC,

     *Plaintiff*,

     v.

WILDRIDE B.V., and WILDRIDE USA CORP.,

     *Defendants.*

Civil Action No: 1:25-cv-05993

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S PRELIMINARY-INJUNCTION MOTION</u>**

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ................................................................... 2

    A.   Plaintiff ............................................................................................. 2
    B.   Plaintiff's WILDBIRD-Brand Products ........................................... 2
    C.   Plaintiff's WILDBIRD Trademarks .................................................. 3
    D.   WILDBIRD-Brand Products Offered Under the WILDBIRD Marks Enjoy
         Widespread Consumer Recognition and Goodwill.............................. 4
    E.   Defendants and Their Infringing WILDRIDE Trademarks.................. 5

III. LEGAL STANDARD ........................................................................... 9

IV.  LEGAL ANALYSIS ............................................................................ 10

    A.   Wildbird is Likely to Prevail on the Merits of its Claims.................... 11

         1.     Wildbird is Likely to Prove Trademark Ownership and
         Validity………………………………………………………………..11
         2.     Wildbird is Likely to Prove that the Infringing WILDRIDE Marks
         Create a Likelihood of Confusion With the WILDBIRD Marks.......................... 14

            i.     Plaintiff's WILDBIRD Marks are Strong...................................... 14

                a.     The WILDBIRD Marks are Conceptually Strong ........... 14

                b.     The WILDBIRD Marks are Commercially Strong........... 15

            ii.    The Parties' Marks Create the Same Overall Impression on
               Consumers...................................................................................... 16
            iii.   The Parties Offer Identical and Closely Related Products............ 17
            iv.    Actual Confusion Has Occurred .................................................. 19
            v.     Defendants Entered the U.S. Marketplace in Bad Faith .............. 20
            vi.    Products Offered Under Defendants' WILDRIDE Marks
               Are Inferior to Products Offered Under Plaintiff's
               WILDBIRD Marks ........................................................................ 21
            vii.   The Eighth *Polaroid* Factor—Like the First, Second, Third,
               Fifth, Sixth, and Seventh Factors, Respectively—Favors
               Preliminarily Enjoining the Use of Defendants'
               WILDRIDE Marks........................................................................ 21

    B.   Plaintiff Will Suffer Irreparable Harm in the Absence of a Preliminary
         Injunction ........................................................................................ 22
    C.   The Balance of Equities Favors Plaintiff ........................................... 24

D.      A Preliminary Injunction Would Protect the Public From Additional
        Confusion ........................................................................................................... 25

V.  CONCLUSION .................................................................................................................. 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*725 Eatery Corp. v. City of New York*,
    408 F. Supp. 3d 424 (S.D.N.Y. 2019)......................................................................16

*3M Co. v. Performance Supply, LLC*,
    458 F. Supp. 3d 181 (S.D.N.Y. 2020)......................................................................29

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) ........................................................................................18

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F. 3d 887 (2d Cir. 2015)...................................................................................15

*Celine S.A. v. Hongkong CSSBUY E-Commerce Co. Ltd.*,
    2024 WL 4627666 (S.D.N.Y. Oct. 30, 2024)....................................................29, 30

*City of New York v. Lopez*,
    2021 WL 6063839 (S.D.N.Y. Dec. 21, 2021) .........................................................16

*Goat Fashion Ltd. 1661, Inc.*,
    2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020)................................................. *passim*

*Hope Organics LLC v. Preggo Leggings LLC*,
    2021 WL 5919367 (S.D.N.Y. Dec. 15, 2021)
    ....................................................................................................................... *passim*

*Lexington Mgmt. Corp. v. Lexington Capital Partners*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998).......................................................................16

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
    818 F.2d 254 (2d Cir. 1987)....................................................................................19

*Museum of Modern Art v. MOMACHA IP LLC*,
    339 F. Supp. 3d 361 (S.D.N.Y. 2018)............................................................. *passim*

*NES Baseball & Softball Facility, Inc. v. Northeast Angels Softball, LLC, et al.*,
    2022 WL 17370117 (S.D.N.Y. Dec. 2, 2022)
    ....................................................................................................................... *passim*

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)............................................................ *passim*

*NYP Holdings v. New York Post Pub. Inc.*,
    63 F. Supp. 3d 328 (S.D.N.Y. 2014)..................................................15, 23, 27, 28

*Palm Bay Imports, Inc. v. Vueve Clicquot Ponsardin Maison Fondee En 1772*,
   396 F.3d 1369 (Fed. Cir. 2005)........................................................................22

*Polaroid Corp. v. Polarad Electronics Corp.*,
   287 F.2d 492 (2d Cir. 1961)...........................................................................19

*Really Good Stuff, LLC v. BAP Investors, L.C.*,
   813 Fed. Appx. 39 (2d Cir. 2020)..................................................................28

*TushBaby, Inc. v. Jinjang Kangbersi Trade Co. Ltd.*,
   2024 WL 4627452 (S.D.N.Y. Oct. 30, 2024)............................................ *passim*

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   800 F. Supp. 2d 515 (S.D.N.Y. 2011).....................................................15, 29

**Statutes**

15 U.S.C. § 1072...............................................................................................25

15 U.S.C. § 1115...............................................................................................16

15 U.S.C. § 1116..........................................................................................14, 30

15 U.S.C. § 1125.....................................................................................16, 17, 27

**Other Authorities**

Fed. R. Civ. P. 65.............................................................................................30

McCarthy on Trademarks and Unfair Competition ........................................17

I.      **PRELIMINARY STATEMENT**

Defendants' recent expansion into the United States immediately caused actual confusion between Plaintiff's WILDBIRD brand and Defendants' WILDRIDE brand. This is not surprising. Plaintiff has been advertising, offering for sale, and selling high-quality, award-winning accessories—including baby carriers—and clothing for children under its WILDBIRD trademarks throughout the United States for more than a decade. Defendants are: (i) using a nearly identical mark—WILDRIDE—to (ii) advertise and sell identical and closely related products—baby and toddler carriers—(iii) in the same marketing and trade channels that Plaintiff uses; and (iv) to the same categories of customers as Plaintiff's customers. Accordingly, consumers are understandably confused. For example, in late-May 2025, Plaintiff and Defendants attended the ABC Kids Expo in Las Vegas, Nevada, which was the first time that Plaintiff was aware of Defendants using their WILDRIDE mark in the United States. Defendants' WILDRIDE mark caused actual confusion at the 2025 ABC Kids Expo. In June 2025, Defendants' WILDRIDE marks confused buyers for a well-known retailer in the United States. This month, Plaintiff began to notice that consumers are confusing Plaintiff and Defendants on social media.

There is no association or connection between Plaintiff and Defendants. Thus, Plaintiff cannot control the use of Defendants' WILDRIDE mark or ensure that products offered under Defendants' mark meet Plaintiff's high-quality standards. This absence of control, combined with consumers mistakenly associating Plaintiff with Defendant (and vice versa), places the reputation and goodwill of Plaintiff's carefully curated WILDBIRD brand and marks into Defendants' hands. To protect that reputation and goodwill—and the public from additional confusion—Plaintiff brings this motion to preliminarily enjoin the use of Defendants' WILDRIDE mark.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff

Founded in 2014 by first-time parents, Tayler and Nate Gunn, WILDBIRD is an award-winning brand of children and parental accessories and clothing.  *See* Gunn Decl., ¶ 4[1].  Wildbird's founders felt the nurturing and protective nature of a mother bird.  *Id*..  As part of that nurturing, Tayler and Nate wanted to keep their newborn child close enough to their bodies to soothe their child with their breathing.  *Id*.  Unable to "wear" their newborn child, Tayler and Nate developed a ring-sling carrier, which allowed them to carry/wear their child.  *Id*.  A representative example of a WILDBIRD-brand ring sling is below:



*Id*.

### B.    Plaintiff's WILDBIRD-Brand Products

As of 2014, Tayler and Nate were not aware of any other baby brand in the United States that had "wild" or "bird" in its name.  Gunn Decl., ¶ 5.  That fact, combined with the nurturing and protective nature of a mother bird that Tayler and Nate felt for their newborn, led them to adopt Wildbird as the name of their company in 2014.  *Id*.

---

[1] "Gunn Decl." refers to the July 22, 2025, Declaration of Nate Gunn.

Since Wildbird's founding in 2014, it has expanded its product offerings from ring slings to include a full range of accessories and clothing for children and their parents. Gunn Decl., ¶ 6. Today, Wildbird offers: (i) ring slings; (ii) "wrap" baby carriers; (iii) pajamas; (iv) sleep sacks; (v) pregnancy pillows; (vi) playmats; (vii) blankets; (viii) pillows; (ix) crib sheets; (x) swaddles; (xi) hats; and (xii) teethers. *Id*.; *see also id*. at Ex. 1. Wildbird currently plans to expand its product offerings to include: (i) additional carriers; (ii) stroller wagons; (iii) bouncers; (iv) bath products; (v) nursery products; (vi) additional clothing; and (vii) play items. *Id*. at ¶ 7.

**C.    Plaintiff's WILDBIRD Trademarks**

To identify and distinguish WILDBIRD-brand products in the marketplace, Plaintiff uses (i) the "WILDBIRD" word mark (the "WILDBIRD Word Mark") and (ii) the inset logo (the "WILDBIRD Logo," together with the WILDBIRD Word Mark, the "WILDBIRD Marks"):



Gunn Decl., ¶ 8.

Wildbird owns U.S. Trademark Registration No. 7,798,495 (the "'459 Registration"), which covers the WILDBIRD Word Mark in the following International Classes and for the following goods and services:

a.    18: Back packs for carrying babies; baby carriers worn on the body;

b.    24: Baby bedding, namely, swaddling blankets, fitted crib sheets, crib skirts, blankets, pillow covers;

c.    25: Baby pajamas; toddler pajamas; sleep gowns, sleepwear for babies in the nature of sleepsacks;

d.    28: Play mats for toddlers and babies; and

e.    35: On-line retail store services featuring baby related consumer products, namely baby carriers, baby pajamas, baby bedding, baby playmats, toddler pajamas, and baby sleep sacks.

Gunn Decl., Ex. 2.

Wildbird also owns U.S. Trademark Application Serial No. 99/068/040 (the "'040 Application"), which seeks registration of the WILDBIRD Logo in the following International Classes and for the following goods and services:

    a.      10: Teethers;

    b.      18: back packs for carrying babies; baby carriers worn on the body;

    c.      20: Maternity pillows; baby pillows;

    d.      24: Baby bedding, namely, swaddling blankets, fitted crib sheets, blankets, pillow covers;

    e.      25: baby pajamas; toddler pajamas; sleep gowns; sleepwear for babies in the nature of sleepsacks; robes; sunhats;

    f.      28: Play mats for toddlers and babies; and

    g.      35: On-line retail store services featuring baby related consumer products, namely back packs for carrying babies, baby carriers worn on the body, baby bedding, namely, swaddling blankets, fitted crib sheets, blankets, pillow covers, baby pajamas, toddler pajamas, sleep gowns, sleepwear for babies in the nature of sleepsacks, robes, sun hats, play mats for toddlers and babies, teethers, maternity pillows and baby pillows.

Gunn Decl., Ex. 3.

Wildbird strengthens and maintains its rights in its WILDBIRD Marks by monitoring the marketplace and enforcing its Marks against infringers. Gunn Decl., ¶ 11. For example, Plaintiff sent a cease-and-desist letter to a company that formerly did business as "WildBird Designs." *Id.*

**D.    WILDBIRD-Brand Products Offered Under the WILDBIRD Marks Enjoy Widespread Consumer Recognition and Goodwill**

Since 2014, Wildbird has spent substantial time, money, and effort on creating a unique association in consumers' minds in the United States between products offered under the WILDBIRD Marks, on the one hand, and Plaintiff, on the other hand. Gunn Decl., ¶ 13. For example, Wildbird spends approximately $6 million a year on advertising and promoting products under its WILDBIRD Marks. *Id.* These efforts, include, for example: (i) advertising on Wildbird's

website; (ii) advertising on Wildbird's social-media accounts; and (iii) advertising via social-media influencers. *Id.*; *see also id.* at Exs. 5-7.

Wildbird prominently uses and displays its WILDBIRD Marks on its website and social-media accounts, which, combined, have more than half-a-million followers. Gunn Decl., Exs. 5-7. Products offered under the WILDBIRD Marks have received widespread, unsolicited media coverage throughout the United States in national publications, such as: *Vogue*; *Glamour*; *Strategist*; and *The Bump*. *Id.* at ¶ 14. Products offered under the WILDBIRD Marks also have appeared on the widely watched *Today* Show. *Id.* at ¶ 15.

Consumers also receive widespread exposure to products offered under Plaintiff's WILDBIRD marks throughout the United States in national retailers, such as: Target; Babylist; and Nordstrom; as well as on Amazon.com. Gunn Decl., ¶ 16. Plaintiff and its products offered under its WILDBIRD Marks also have received critical acclaim. *Id.* at ¶ 17. For example, in 2025, Plaintiff's WILDBIRD-brand Aerial Buckle Wrap received Parents.com's "Best Baby Wrap" Award. *Id.*; *see also* Ex. 8. Products offered under the WILDBIRD Mark also have been a commercial success. Gunn Decl., ¶ 18. For example, Plaintiff's annual revenue on sales of products offered under the WILDBIRD Marks exceeds $20 million. *Id.*

### E.    Defendants and Their Infringing WILDRIDE Trademarks

According to documents filed with the United States Patent and Trademark Office ("PTO"), Defendant Wildride B.V. is a Netherlands besloten vennootschap with a principal place of business located at Donkere Spaarne 44, 2011 JH, Haarlem NETHERLANDS. *See* Thomas Decl., Exs. 1-2[2]. According to the website us.wildridecarrier.com, Defendant Wildride USA Corp.

---

[2] "Thomas Decl." refers to the July 22, 2025, Declaration of Jonathan W. Thomas, Esq.

is a Delaware corporation and maintains its principal place of business at 228 East 45th Street,

Suite 9E, New York, New York 10017.  *See id.* at Exs. 3-4.

According to the PTO's database, Defendant Wildride B.V. owns U.S. Trademark

Application Serial No. 79/375,825 (the "'825 Application"), which seeks registration of the word

mark WILDRIDE in, *inter alia*, the following International Classes for the following goods and

services:

> a.     18: Baby and children carriers worn on the body; pouch baby and infant carriers; baby and infant carriers; sling bags for carrying babies and infants; slings for carrying babies and infants; baby and infant carrying bags, and

> b.     35: Retailing services and wholesale services featuring baby and children carriers worn on the body, pouch baby and infant carriers, baby and infant carriers, carrier bags, slings for carrying babies and infants, sling bags for carrying babies and infants; shop services, business intermediary services, selling and buying and business advice relating to baby and children carriers worn on the body, pouch baby and infant carriers, baby and infant carriers, carrier bags, slings for carrying babies and infants, sling bags for carrying babies and infants.

Thomas Decl., Ex. 1.

According to the PTO's database, Defendant Wildride B.V. owns U.S. Trademark

Application Serial No. 98/558,373 (the "'373 Application"), which seeks registration of the word

mark WILDRIDE in International Class 18 for Baby and children carriers worn on the body; pouch

baby and infant carriers; baby and infant carriers worn on the body; sling bags for carrying babies

and infants; slings for carrying babies and infants; baby and infant carrying bags.  Thomas Decl.,

Ex. 2.  The WILDRIDE word mark, as set forth in the '825 Application and the '373 Application,

is referred to hereinafter the "WILDRIDE Word Mark."

In the '825 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark

in, *inter alia*, the same International Classes covered by Plaintiff's '459 Registration for the

WILDBIRD Word Mark, namely, 18 and 35.  Thomas Decl., Ex. 1.  In the '825 Application,

Wildride B.V. seeks registration of the WILDRIDE Word Mark for goods and services that are

identical to goods and services covered by Plaintiff's '459 Registration for the WILDBIRD Word

Mark, namely, baby carriers and retail store services concerning, among other things, baby carriers. *Compare id. with* Gunn Decl., Ex. 2.

In the '373 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark in same International Class covered by Plaintiff's '459 Registration for the WILDBIRD Word Mark, namely, 18.  Thomas Decl., Ex. 2.  In the '373 Application, Wildride B.V. seeks registration of the WILDRIDE Word Mark for goods that are identical to goods covered by Plaintiff's '459 Registration, namely, baby carriers. *Compare id. with* Gunn Decl., Ex. 3.

Wildride B.V. based the '825 Application on an International Registration Date of May 12, 2023 for International Registration No. 1743929.  Thomas Decl., Ex. 1.  In the '373 Application, Wildride B.V. claimed a first-use date of the WILDRIDE Word Mark of January 2021.  *Id*. at Ex. 2.  As set forth in the '459 Registration, Plaintiff began using its WILDBIRD Word Mark in United States commerce in November 2014 for baby carriers and retail store services.   Gunn Decl., Ex. 1.

On information and belief, Defendant Wildride USA owns, operates, and is responsible for the content displayed on the website located at https://us.wildridecarrier.com ("Defendants' U.S. Website").  Thomas Decl., Exs. 3-4.  Defendants' U.S. Website and social-media accounts display the Infringing WILDRIDE Word Mark and inset logos (together with the WILDRIDE Word mark, the "Infringing WILDRIDE Marks"):



**WILDRIDE**    *Id.*; *see also id.* at Ex. 7.

Defendants are using their Infringing WILDRIDE Marks in United States commerce in connection with advertising, offering for sale, and selling products that are identical to products offered under Plaintiff's WILDBIRD Marks, namely, baby carriers.  For example, in addition to Defendants' U.S. Website, nordstrom.com advertises WILDRIDE-brand baby carriers for sale.  *See* Thomas Decl., Ex. 5.  Nordstrom also sells WILDBIRD-brand products.  Gunn Decl., ¶ 16.

### A. Defendants' Recent Expansion into the United States is Causing Actual Confusion

Defendants only recently began using their WILDRIDE Marks in the United States.  For example, the earliest capture of Defendants' U.S. Website on the Wayback Machine is May 19, 2025.  *See* Thomas Decl., Ex. 6.  Yet the use of Defendants' WILDRIDE Marks already is causing actual confusion in the United States.

From May 21-23, 2025, Plaintiff attended the ABC Kids Expo in Las Vegas, Nevada.  Gunn Decl., ¶ 20.  Defendants also attended the 2025 ABC Kids Expo.  *Id*.  This was the first time that Plaintiff was aware of Defendants using their Infringing WILDRIDE Marks in the United States.  *Id*.; *see also id*. at ¶ 19.  On Day 2 of the ABC Kids Expo, a buyer for Nordstrom asked Plaintiff's representative if Plaintiff's WILDBIRD brand was affiliated with Defendants' WILDRIDE brand.  *Id*. at ¶ 21.  On Day 3 of the ABC Kids Expo, multiple suppliers confused Plaintiff's WILDBIRD brand with the Defendants' WILDRIDE brand.  *Id*. at ¶ 22.  For example, one supplier said to Plaintiff's representative: "oh, yes; I saw your booth"—but they were referring to Defendants' booth.  *Id*.  As another example, on supplier asked Plaintiff's representative: "You are Wildride, yes"?  *Id*.

In June 2025, Plaintiff and Defendants attended a brand showcase for Nordstrom, which included only 6-to-8 other brands.  Gunn Decl., ¶¶ 23-4.  At least four category leads for Nordstrom stores throughout the United States asked Plaintiff's representative if Plaintiff's WILDBIRD brand

was affiliated with Defendants' WILDRIDE brand or if Plaintiff's WILDBIRD brand was the same as Defendants' WILDRIDE brand. *Id.* This month, Plaintiff began to notice for the first time that consumers are confusing Plaintiff and Defendants on social media. *Id.* at ¶ 26. For example, as shown in the inset image, consumers are "tagging" Plaintiff's Instagram account when posting about Defendants' products:



*Id.*

## III.    LEGAL STANDARD

Given that Defendants' recent entrance into the United States marketplace is causing actual confusion, Plaintiff seeks judicial intervention to prevent any further confusion among the public and irreparable harm to Plaintiff's carefully curated brand.   To that end, Plaintiff seeks an Order from this Court that preliminarily enjoins Defendants' use of the Infringing WILDRIDE Marks, which this Court has the authority to do pursuant to FED. R. CIV. P. 65(a) and 15 U.S.C. § 1116(a). *See* FED. R. CIV. P. 65(a)(1) (The court may issue a preliminary injunction only on notice to the adverse party"); and 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title").

To obtain a preliminary injunction, Wildbird must "establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in [its] favor […]; and (3) that a preliminary injunction is in the public interest." *TushBaby, Inc. v. Jinjang Kangbersi Trade Co. Ltd.*, 2024 WL 4627452, at *2 (S.D.N.Y. Oct. 30, 2024) (granting preliminary injunction in trademark case); *accord Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

## IV.    LEGAL ANALYSIS

Courts in this District regularly issue preliminary injunctions in trademark cases. *See*, *e.g.*, *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011); *NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328 (S.D.N.Y. 2014); *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361 (S.D.N.Y. 2018); *Goat Fashion Ltd. 1661, Inc.*, 2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020); *Hope Organics LLC v. Preggo Leggings LLC*, 2021 WL 5919367 (S.D.N.Y. Dec. 15, 2021); *NES Baseball & Softball Facility, Inc. v. Northeast Angels Softball, LLC, et al.*, 2022 WL 17370117 (S.D.N.Y. Dec. 2, 2022); and *TushBaby, Inc.*, 2024 WL 4627452.

This Court should issue one, too, as Wildbird establishes all four factors necessary to obtain a preliminary injunction. Wildbird is likely to succeed on the merits of its claims given that Defendants use their nearly identical WILDRIDE Marks to advertise and sell identical and closely related products in the same marketing and trade channels that Plaintiff uses to the same categories of customers. Wildbird's likelihood of success on the merits, combined with the likelihood of Defendants' WILDRIDE Marks injuring the reputation and goodwill of Plaintiff's carefully curated WILDBIRD brand and Marks, constitutes irreparable harm. This irreparable harm,

combined with the public's interest in not being confused about the source of good and services, tips all four favor factors in Plaintiff's favor and warrants preliminarily enjoining the use of Defendants' WILDRIDE Marks.

### A.    Wildbird is Likely to Prevail on the Merits of its Claims

Wildbird must establish a likelihood of success on the merits of only one of its claims to obtain a preliminary injunction. *See 725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019). Nonetheless, because the same standard governs Wildbird's claims for trademark infringement, unfair competition, false association, and false designation of origin under Sections 32 and 43(a)(1)(a) of the Lanham Act, and New York common law (collectively, the "Claims"), Wildbird analyzes these Claims together for purposes of the instant motion.

For Wildbird to prevail on its Claims, it must prove: (i) it owns its WILDBIRD Marks; (ii) its WILDBIRD Marks are valid; and (iii) Defendants are using the WILDRIDE Marks in a manner that creates a likelihood of confusion with Plaintiff's WILDBIRD Marks. *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277 (S.D.N.Y. 1998) (applying the same standard to Section 32 and 43(a)(1)(A) claims; granting preliminary injunction).

### 1.    Wildbird is Likely to Prove Trademark Ownership and Validity

Wildbird's '549 Registration constitutes *prima facie* evidence of its ownership of the WILDBIRD Word Mark and its validity.   *See* 15 U.S.C. § 1115(a); *see also City of New York v. Lopez*, 2021 WL 6063839, at *2 (S.D.N.Y. Dec. 21, 2021) ("The City is likely to succeed on the merits of its claims because the City has shown that it owns the City Trademarks by proffering certificates of registration for the several marks which Defendant allegedly copied.  A certificate of registration from the USPTO is considered prima facie evidence of a trademark's validity").

Wildbird also is likely to prove ownership and validity of its unregistered WILDBIRD Logo.  *See NES Baseball & Softball Facility, Inc. v. Northeast Angels Softball, LLC*, 2022 WL

17370117, at *5 ("The Lanham Act (the 'Act') protects both registered and unregistered trademarks, as well as trade dress") (citing, *inter alia*, 15 U.S.C. § 1125(a)(1)(A)).

To prove ownership and validity of the unregistered WILDBIRD Logo, Plaintiff must prove: (i) it was "the first to use a particular mark to identify [its] goods or services in a given market," *i.e.*, trademark priority and (ii) its Logo is distinctive—either inherently or acquired—of Plaintiff's goods and services.  *Id.*; *see also* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 16:1.50 ("[I]n the United States, the rule of priority is that ownership and priority of a trademark go to the party who was first-to-use"), § 11:2 (" Without achieving distinctiveness, either inherently or through the acquisition of secondary meaning, then a designation does not have the legal status of a 'trademark' or 'service mark.' No distinctiveness—no mark").

To establish priority, Wildbird must demonstrate that it used its WILDBIRD Logo in United States commerce before Defendants began using the Infringing WILDRIDE Marks and that Wildbird's use of the Logo "has been deliberate and continuous, not sporadic, casual or transitory." *NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *5.  Wildbird is likely to establish both.  As discussed *supra*, Wildbird began using its WILDBIRD Logo for baby carriers in November 2014; whereas, Defendants' claimed priority and/or first-use dates of the Infringing WILDRIDE Marks was 2021 and 2023.  Wildbird also has been using its WILDBIRD Logo continuously for more than a decade to advertise, promote, offer for sale, and sell its products throughout the United States.  Accordingly, Wildbird is likely to establish priority.  *See NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *6 (priority and continuous use based on only "at least two years" of use).

To establish distinctiveness, Wildbird must demonstrate where its WILDBIRD Logo falls on the spectrum of trademark distinctiveness, *i.e.*, whether the Logo is "generic, descriptive, suggestive, arbitrary, or fanciful."  *NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *6 (referencing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). For context:

> "Generic marks, which are those consisting of words identifying the relevant category of goods or services have no inherent distinctiveness and are not protectable.  Descriptive marks are those consisting of words identifying qualities of the product. […] Suggestive marks are those that are not directly descriptive but do suggest a quality or qualities of the product, through the use of 'imagination, thought and perception' and are inherently distinctive.  Arbitrary or fanciful marks, which are ones that do not communicate any information about the product either directly or by suggestion, are inherently very distinctive."

*NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *6 (internal quotations and citations omitted.

The WILDBIRD Logo is inherently distinctive.  Wildbird is not aware of any other company in the United States using a logo that consists of "wild" or "bird" or those words together with the image of a bird in connection with children's clothing and accessories.  Gunn Decl., ¶ 12. Thus, the WILDBIRD Logo is not generic.  The WILDBIRD Logo also does not describe or identify any qualities of Plaintiff's products, which have nothing to do with birds (wild or otherwise).  Accordingly, whether classified as suggestive, arbitrary, or fanciful, the WILDBIRD Logo is inherently distinctive and, therefore, valid.  *See NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *6 (unregistered logo was inherently distinctive).

Based on the foregoing, Plaintiff is likely to prove ownership and validity of its WILDBIRD Marks.  Plaintiff also is likely to prove that Defendants' use of the Infringing WILDRIDE Marks creates a likelihood of confusion with Plaintiff's WILDBIRD Marks.

**2.    Wildbird is Likely to Prove that the Infringing WILDRIDE Marks Create a Likelihood of Confusion With the WILDBIRD Marks**

To assess likelihood of confusion, "courts in this Circuit apply the eight-factor balancing test described in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) […]." *NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *8. Those factors "are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Id*.

While "no single *Polaroid* factor is determinative, [] the first three factors are 'perhaps the most significant.'" *New York City Triathlon, LLC*, 704 F. Supp. 2d at 341 (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)); *see also Museum of Modern Art*, 339 F. Supp. 3d at 380. Here, not only do the critically important first, second, and third *Polaroid* factors favor Plaintiff but also the fifth, sixth, seventh, and eighth factors do, too.

### i.    Plaintiff's WILDBIRD Marks are Strong

For purposes of the first *Polaroid* factor, a trademark's "strength" refers to "its distinctiveness, or its origin-indicating quality, in the eyes of the purchasing public." *Hope Organics LLC*, 2021 WL 5919367, at *3. When assessing strength, "courts will consider: (1) the mark's 'inherent distinctiveness' and (2) the mark's distinctiveness in the marketplace." *Id*.

### a.    The WILDBIRD Marks are Conceptually Strong

Both of Plaintiff's WILDBIRD Marks are inherently distinctive and conceptually strong. The PTO's registration of the WILDBIRD Word Mark without proof of secondary meaning creates a rebuttal presumption of inherent distinctiveness. *See Hope Organics LLC*, 2021 WL 5919367,

at *4; *Goat Fashion Ltd.*, 2020 WL 5758917, at *10.   But even if the WILDBIRD Word Mark was not registered, it is inherently distinctive for the same reasons discussed above concerning the WILDBIRD Logo's inherent distinctiveness, namely: the word "wildbird" is not a commonly used term in the children's accessories-and-apparel industry and it does not describe any qualities of the children's accessories and apparel that Plaintiff advertises and sells under its WILDBIRD Marks. According, the WILDBIRD Marks are conceptually strong marks.  *Accord Hope Organics LLC*, 2021 WL 5919367, at *4; *NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *6.

> b.    **The WILDBIRD Marks are Commercially Strong**

The WILDBIRD Marks also are commercially strong marks.  When assessing a mark's distinctiveness in the marketplace, "the court considers six factors: "advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use."  *Hope Organics LLC*, 2021 WL 5919367, at *5.

For more than a decade, Plaintiff has invested substantial sums in creating a unique association in consumer' minds between the WILDBIRD Marks, on the one hand, and Plaintiff, on the other hand.  Plaintiff spends millions of dollars each year on advertising that prominently features its WILDBIRD Marks.   Products advertised and sold under the WILDBIRD Marks enjoy over $20 million in annual sales; receive unsolicited media coverage in national publications, such as *Vogue* and *Glamour*; and receive awards.   Consumers also receive widespread exposure to products advertised and sold under the WILDBIRD Marks at national retailers, such as Target, Nordstrom, and Amazon.com, as well as on Plaintiff's social-media accounts.  Plaintiff also has enforced the WILDBIRD Marks by sending protest letters, including to "Wildbird Designs."

Based on the foregoing, the WILDBIRD Marks are commercially strong identifiers of and for Plaintiff and products offered under the WILDBIRD Marks.  *See Hope Organics LLC*, 2021

WL 5919367, at *5 (finding commercial strength where, as here, plaintiff sold millions of dollars' worth of products each year under its marks; invested millions of dollars into advertising; received media coverage in, *inter alia*, *Glamour*; and promoted its marks on social media); *Goat Fashion Ltd.*, 2020 WL 5758917, at *10 (finding commercial strength where, as here, plaintiff used mark continuously for over a decade; received media coverage in, *inter alia*, *Glamour*; and enforced its marks); *TushBaby, Inc.*, 2024 WL 4627452, at *4 (finding commercial strength where, as here, plaintiff invested millions into advertising; had sales in the millions of dollars; and enforced its marks).

This commercial strength, combined with the WILDBIRD Marks' conceptual strength, tips the first *Polaroid* factor in Plaintiff's favor.

### ii.    The Parties' Marks Create the Same Overall Impression on Consumers

When assessing the similarities between parties' marks under the second *Polaroid* factor, "the court evaluates the overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Hope Organics LLC*, 2021 WL 5919367, at *6 (internal quotations and citations omitted); *see also NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *8 ("[A] court does not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace").

Here, the parties use their marks and logos on their websites; social-media accounts; and products.   The parties' retailers also use their marks in advertisements for the parties' products. These uses of the parties' marks create the same overall impression on consumers in the marketplace.   The parties' marks and logos begin with "W-I-L-D," which is the dominant portion of the marks and logos and is what consumers are likely to recall when seeing the marks and logos

in the marketplace. *See Palm Bay Imports, Inc. v. Vueve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (first word is a "prominent feature" because it is "the first word in the mark and the first word to appear on the label"); *New York City Triathlon, LLC*, 704 F. Supp. 2d at 333-34 (in a logo or mark that "contains both a design and a word, the word is generally considered to be dominant and is therefore accorded greater weight"); *Goat Fashion Ltd.*, 2020 WL 5758917, at *11 (finding mark similarity; "[t]he average consumer, seizing on the memorable word 'GOAT,' would likely perceive these caprine marks as similar and have difficulty distinguishing the brands"). The parties' marks also sound similar when spoken aloud. *See Hope Organics LLC*, 2021 WL 5919367, at *6 ("'[M]arks are considered similar when they are similar in appearance, sound and meaning'"; "when spoken, MTHR and MUTHA are almost indistinguishable in sound") (quoting *Museum of Modern Art*, 339 F. Supp. 3d at 375).

Based on the foregoing, the second *Polaroid* factor favors Plaintiff.

### iii.   The Parties Offer Identical and Closely Related Products

Under the third *Polaroid* factor, the court considers "to what extent the two products compete with each other [] accounting for the market proximity and geographic proximity." *NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *9. The former "asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products." *Id*. Combined, "[b]oth elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion." *Id*.

Here, consumers are likely to be confused when they encounter the parties' WILD-formative, WILD-dominant marks and logos on identical and closely related products in the marketplace, namely: baby carriers and toddler carriers. What is more, Nordstrom carries both parties' products. To the extent Defendants argue that the parties do not use their marks for competitive goods because Defendants also sell toddler carriers, that argument would fail for two

reasons.  Plaintiff intends to offer toddler carriers under its WILDBIRD Marks.  But even if Plaintiff did not have this intention, baby carriers and toddler carriers have an overlapping customer base.  Parents can "wear" a baby and a toddler; otherwise, the parties ostensibly would not sell or intend to sell both types of carriers.  More to the point, though, is that a toddler carrier is the next logical progression in carriers after a baby carrier.  Accordingly, the same class of customers who purchased a baby carrier will be in the market for a toddler carrier, and the confusingly similar nature of Defendants' WILDRIDE Marks is likely to confuse those customers into believing that Plaintiff is the source of Defendants' toddler carrier and/or that Defendants' toddler carrier has some type of association with or connection to Plaintiff's baby carrier.

In sum, the parties' products are identical (baby carriers); closely related and fall into the same category (baby and toddler carriers are in the children's accessories market); appeal to the same class of customers; and are sold through the same channels.   Accordingly, the third *Polaroid* factor favors Plaintiff and the fourth is inapplicable because there is no gap in the parties' offerings for Plaintiff to bridge.  *See NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *9 (third and fourth *Polaroid* factors favored plaintiff where, as here, the parties' goods "are of the same type and function, and that the marks at issue serve to promote these goods.  Thus, there is 'no gap to bridge'"); *Hope Organics LLC*, 2021 5919367, at *7 (although not identical, parties' products were competitive where products fell into same category and "aimed at new and expecting mothers"; fourth *Polaroid* factor neutral where, as here, "the parties' products are already in direct competition […]"); *NYP Holdings*, 63 F. Supp. 3d at 337 ("[T]he goods and services produced by Defendants fall within the same categories, appeal to the same class of consumers, and are sold through the same channels as the goods and services produced by NYP Holdings using the NEW

YORK POST Marks; fourth factor inapplicable where, as here, the "parties' goods and services are already in direct competition with each other").

**iv.    Actual Confusion Has Occurred**

Under the fifth *Polaroid* factor, "actual confusion means consumer confusion that enables a seller to pass off his goods as the goods of another." *Museum of Modern Art*, 339 F. Supp. 3d at 378. "It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *New York City Triathlon*, *LLC*, 704 F. Supp. 2d at 318. "This is particularly true when [as here] an infringing product or service has been on the market for only a short time." *Id*. Nonetheless, if there is evidence of actual confusion, then that "is particularly relevant," as its "indicates a likelihood of confusion" occurring. *TushBaby, Inc.*, 2024 WL 4627452, at *7 (internal quotations and citations omitted); *see also Goat Fashion Ltd.*, 2020 WL 5758917, at *13 ("Although actual confusion need not be shown to prevail under the Lanham Act, *Lois Sportswear*, [t]here can be no more positive or substantial proof of the likelihood of confusion") (internal quotations and citations omitted).

Here, Defendants' Infringing WILDRIDE Marks caused actual confusion almost immediately upon Defendants' entrance to the United States marketplace. Attendees at the 2025 ABC Kids Expo in May 2025 expressed actual confusion. Nearly half a dozen representatives of Nordstrom expressed actual confusion in June 2025. Notably, this confusion occurred despite the representatives interacting—at that time—with only 6-to-8 other brands. This month, Plaintiff began noticing that consumers were expressing actual confusion on social media. This evidence of anecdotal actual confusion tips the fifth *Polaroid* factor in Plaintiff's favor—especially given the short period of time that Defendants have used their Infringing WILDRIDE Marks in the United States. *Accord New York City Triathlon*, *LLC*, 704 F. Supp. 2d at 319 (actual confusion

19

occurred only months after defendant's entrance to the marketplace); *see also Museum of Modern Art*, 339 F. Supp. 3d at 361 (actual confusion evidence included confusion on social media); *TushBaby, Inc.*, 2024 WL 4627452, at *7 (*same*).

**v.    Defendants Entered the U.S. Marketplace in Bad Faith**

Under the sixth *Polaroid* factor, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Hope Organics LLC*, 2021 WL 5919367, at *9. When evaluating the defendant's intent, actual or constructive knowledge of the senior user combined with "similarities so strong that it seems plain that deliberate copying has occurred, [courts] have upheld findings of bad faith." *Id.* (internal quotations and citations omitted). That is precisely the case here.

Prior to Defendants' entrance to the U.S. marketplace, Plaintiff had been using its WILDBIRD Marks to advertise and sell, *inter alia*, baby carriers throughout the United States for at least a decade. Even if Defendants were not actually aware of Plaintiff's WILDBIRD Marks despite Plaintiff using them throughout the United States for over a decade, the '459 Registration for Plaintiff's WILDBIRD Word Mark gave Defendants constructive notice of Plaintiff's trademark rights. *See* 15 U.S.C. § 1072 (Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof"). This constructive knowledge, combined with Defendants' decision to enter the U.S. marketplace with nearly identical marks for identical and closely related products, allows this Court to infer bad faith by Defendants. *See Hope Organics LLC*, 2021 WL 5919367, at *9.

20

### vi.    Products Offered Under Defendants' WILDRIDE Marks Are Inferior to Products Offered Under Plaintiff's WILDBIRD Marks

Under the seventh *Polaroid* factor, the court has "weigh cross-cutting considerations." *Goat Fashion Ltd.*, 2020 WL 5758917, at *14.   "On the one hand, the court must determine whether defendant's products or services are inferior to plaintiff's, thereby tarnishing plaintiff's reputation if consumers confuse the two." *Id*.  On the other hand, if the products are roughly equal in quality, the court must also consider whether that very similarity of quality may tend to create confusion as to source by bringing the products into even closer proximity." *Id*.  (internal quotations citations omitted).

Products offered under Plaintiff's WILDBIRD Marks have received numerous awards and favorable customer reviews.   *See* Gunn Decl., Ex. 9.  Products offered under Defendants' WILDRIDE Marks have already received negative customer reviews in the United States.  For example, a customer on Nordstrom's website gave one of Defendants' products only 3 out of 5 stars; complained about its design; and described the product as "[o]verall, it's ok —not a must have."  Gunn Decl., Ex. 10.

Accordingly, the seventh *Polaroid* factor favors Plaintiff.  *See Goat Fashion Ltd.*, 2020 WL 5758917, at *14 (customer complaints about defendant's products tipped seventh *Polaroid* factor in plaintiff's favor).

### vii.    The Eighth *Polaroid* Factor—Like the First, Second, Third, Fifth, Sixth, and Seventh Factors, Respectively— Favors Preliminarily Enjoining the Use of Defendants' WILDRIDE Marks.

Under the eighth *Polaroid* factor, "courts are to consider "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *TushBaby, Inc.*, 2024 WL

4627452, at *8.  Plaintiff acknowledges that, generally speaking, parents purchasing accessories and clothing for their children are careful and discerning.  *See id.*  Nonetheless, Defendants' WILDRIDE Marks have confused parents and experienced retail buyers of the parties' products.

Accordingly, the eighth *Polaroid* factor—like the first, second, third, fifth, sixth, and seventh factors, respectively—favors preliminarily enjoining the use of Defendants' WILDRIDE Marks to prevent a likelihood of more confusion occurring.  *See Hope Organics LLC*, 2021 WL 5919367, at *11 (eighth factor favored preliminary injunction; "when, as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion"); *TushBaby, Inc.*, 2024 WL 4627452, at *8 (granting preliminary injunction where six of the eight *Polaroid* factors favored Plaintiff); *Museum of Modern Art*, 339 F. Supp. 3d at 380 (*same*); *New York City Triathlon, LLC*, 704 F. Supp. 2d at 342 (*same*); *Goat Fashion Ltd.*, 2020 WL 5758917, at *15 (granting preliminary injunction where five of the eight *Polaroid* factors favored Plaintiff); *NYP Holdings*, 63 F. Supp. 3d at 338 (*same*); and *NSE Baseball & Softball Facility, Inc.*, 2022 WL 1737011, at *11 (of the four relevant factors, three favored plaintiff).

Based on the foregoing, Plaintiff is likely to succeed on the merits of its Claims.

**B.    Plaintiff Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

Plaintiff establishing a likelihood of success on the merits of its Claims creates a rebuttable presumption of irreparable harm.  *See* 15 U.S.C. § ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a […] likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order").

Plaintiff also has *proven* irreparable harm.  As background, "[i]rreparable harm is 'harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Really Good Stuff, LLC v. BAP Investors, L.C.*, 813 Fed. Appx. 39, 44 (2d Cir. 2020) (internal quotations and citations omitted).   In the trademark context, "[i]t is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard." *New York City Triathlon, LLC*, 704 F. Supp. 2d at 325; *see also Really Good Stuff, LLC*, 813 Fed. Appx. at 44 ("The loss of reputation and goodwill constitutes irreparable harm").  "And for good reason […] 'loss of control over one's reputation is neither calculable nor precisely compensable.'" *TushBaby, Inc.*, 2024 WL 4627452, at *8 (quoting *NYP Holdings*, 63 F. Supp. 3d at 342).

Here, Plaintiff has spent more than a decade investing substantial resources into its carefully curated WILDBIRD brand, which the WILDBIRD Marks identify in the marketplace. Defendant is freeriding off the reputation and goodwill of the WILDBIRD Marks by using the Infringing WILDRIDE Marks for the same and competitive products in the same marketing and trade channels to appeal to the same categories of customers.   Unsurprisingly, Defendants' WILDRIDE Marks have already caused actual confusion.

Moreover, Plaintiff cannot control the use of Defendants' WILDRIDE Marks or monitor the quality of products offered thereunder, which already have received negative customer reviews.  *See* Gunn Decl., ¶¶ 28-9.  This lack of control, combined with consumers mistakenly associating Plaintiff with Defendants, leaves the reputation and goodwill of Plaintiff's carefully curated WILDBIRD Marks and brand in Defendants' hands.  *See id.*  This is textbook irreparable harm.  *See also New York City Triathlon, LLC.*, 704 F. Supp. 2d at 325; *see also TushBaby, Inc.*, 2024 WL 4627452, at *8 ("Courts have consistently found irreparable harm to exist in situations

where there is a likelihood of confusion between the marks, and where the reputation and goodwill cultivated by the party seeking the injunction would be out of the party's control because of the infringement"); *Hope Organics LLC*, 2021 WL 5919367, at *12 ("Plaintiff has demonstrated the likelihood of confusion between the MUTHA and MTHR marks, and, therefore, absent a preliminary injunction, 'the reputation and goodwill cultivated by [Hope Organics] would be out of its hands'") (quoting *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541)); *accord NES Baseball & Softball Facility, Inc.*, 2022 WL 17370117, at *11.

### C.    The Balance of Equities Favors Plaintiff

As discussed *supra*, the reputation and goodwill of Plaintiff's carefully curated WILDBIRD Marks and brand will suffer irreparable harm in the absence of a preliminary injunction. *Accord Tushbaby, Inc.*, 2024 WL 4627452, at *9; *Hope Organics LLC*, 2021 WL 5919367, at *13.

In stark contrast, preliminarily enjoining the use of Defendants' Infringing WILDRIDE Marks would not adversely affect Defendants. Defendants could still sell their products in the United States—just not under the Infringing WILDRIDE Marks. To the extent Defendants argue that a preliminary injunction would cause Defendants to lose money, that is a crisis of Defendants' own making; not infringing is not a "hardship."[3] *See Tushbaby, Inc.*, 2024 WL 4627452, at *9 ("And although a preliminary injunction is likely to carry economic costs for Appearing Defendants, such harms are largely self-inflicted given that [Appearing] Defendants took a calculated risk in launching a product with a trade dress virtually identical to the trade dress

---

[3] For this reason, Plaintiff also respectfully submits that a bond is not warranted in this case. *See Goat Fashion Ltd.*, 2020 WL 5758917, at *16, n.6 ("1661 argues that if Goat Fashion prevails in its motion, it should have to post bond. […] Goat Fashion argues that it is up to the discretion of the Court whether or not the prevailing party is required to post bond, depending on proof of likelihood of harm. […] Because the Court is not convinced that a preliminary injunction will pose consequential cognizable harm to 1661, no such bond is required").

associated with TushBaby"); *see also Celine S.A. v. Hongkong CSSBUY E-Commerce Co. Ltd.*, 2024 WL 4627666, at *4 (S.D.N.Y. Oct. 30, 2024) ("the law does not protect the hardship arising from the loss of the chance to promote infringing products) (internal quotations and citations omitted); *see also 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 197 (S.D.N.Y. 2020) ("It would not be a 'hardship' for Defendant to refrain from engaging in lawful activities related to [Plaintiff's brand"); *Hope Organics LLC*, 2021 WL 5919367, at *13 (a defendant's loss of sales from not using infringing marks "is 'quantifiable' and can be compensated.  In the contrast, the 'loss of consumer goodwill' that [a plaintiff] will face is 'unquantifiable'").

Based on the foregoing, the balance of hardships favors Plaintiff.

### D.    A Preliminary Injunction Would Protect the Public From Additional Confusion

Preliminarily enjoining the use of Defendants' Infringing WILDRIDE Marks would benefit the public by preventing additional confusion.  *See Celine S.A.*, 2024 WL 4627666, at *4 ("'[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods or unknown origin or quality'") (quoting *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 344)); *see also Tushbaby, Inc.*, 2024 WL 4627452, at *9 ("The consuming public has a protectable interest in being free from confusion, deception and mistake"); *Goat Fashion Ltd.*, 2020 WL 5758917, at *16 ("Customer confusion has resulted from 1661's use of its GOAT mark in connection with apparel, and preventing this confusion would benefit the public"); and *Hope Organics LLC*, 2021 5919367, at *13 ("The defendant's MTHR mark is likely to cause confusion in the market and harm the reputation of an up-and-coming brand. Accordingly, the public would be served by ending that confusion").

## V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court enter an Order, pursuant to FED. R. CIV. P. 65 and 15 U.S.C. § 1116(a), which:

1.    Preliminarily enjoins Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the Infringing WILDRIDE Marks (or any other mark(s) confusingly similar to Plaintiff's WILDBIRD Marks) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, children's accessories and clothing;

2.    Orders Defendants to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

3.    Awards to Plaintiff any further relief that this Court deems just and equitable.

Dated: July 22, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas (JT1016)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9219
Email: jonathan.thomas@gtlaw.com

Molly R. Littman-Johnson (to apply *pro hac vice*)
90 South 7th St., Suite 3500
Minneapolis, Minnesota 55402
Tel:  (612) 259-9669
Fax: (612) 259-9700
Email: Molly.Littman@gtlaw.com

*Attorneys for Plaintiff Wildbird LLC*

## <u>LOCAL RULE 7.1(C) CERTIFICATION</u>

The undersigned certifies that the foregoing document was prepared using Microsoft Word on a computer.  According to the word-count feature in Microsoft Word, the foregoing document contains 8,403 words, which is less than 8,750-word maximum under Local Rule 7.1(c).

<u>*/s/ Jonathan W. Thomas*</u>
Jonathan W. Thomas

*Attorney for Plaintiff Wildbird LLC*