IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILDBIRD LLC,<br><br>    *Plaintiff*,<br><br>    v.<br><br>WILDRIDE B.V., and WILDRIDE USA CORP.,<br><br>    *Defendants*. | Civil Action No: 1:25-cv-05993 |

**PLAINTIFF WILDBIRD LLC'S REPLY BRIEF
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................... 1

I.     Plaintiff Established a Likelihood of Success on the Merits. ............................................. 1

        A.     Plaintiff's WILDBIRD Marks Are Valid and Strong. ............................................ 1

              1.     Plaintiff's Marks Are Inherently Distinctive. ............................................ 1
              2.     Plaintiff's Marks Have Acquired Distinctiveness...................................... 1
              3.     There Is No Crowded Field........................................................................ 3

        B.     Likelihood of Confusion ........................................................................................ 4

              1.     Plaintiff's WILDBIRD Marks Are Strong................................................... 5
              2.     The Parties' Marks Are Similar. ................................................................ 5
              3.     The Parties' Products Are Similar ............................................................. 6
              4.     Actual Confusion is Increasingly Occurring—Including Yesterday .......... 7
              5.     Bad Faith, Quality Issues, and Consumer Sophistication ........................... 8

II.     Irreparable Harm ................................................................................................................. 9

              1.     Plaintiff Diligently Filed This Motion. ...................................................... 9

III.     Balance of Equities ........................................................................................................... 11

IV.     Public Interest ................................................................................................................... 12

V.     This Court Should Waive Bond Requirement. ................................................................. 12

CONCLUSION............................................................................................................................. 13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*725 Eatery Corp. v. City of New York*,
  408 F. Supp. 3d 424 (S.D.N.Y. 2019) ........................................................................... 12

*Bear U.S.A., Inc. v. Kim*,
  71 F. Supp. 2d 237 (S.D.N.Y. 1999) ............................................................................... 4

*Celine S.A. v. Hongkong SSBUY E-Commerce Co.*,
  2024 U.S. Dist. LEXIS 197474 (N.D.N.Y. Oct. 30, 2024) ........................................... 11

*Clifford Ross Co. v. Nelvana, Ltd.*,
  710 F. Supp. 517 (S.D.N.Y. 1989) ................................................................................ 11

*Girl Scouts of Am. v. Boy Scouts of Am.*,
  597 F. Supp. 3d 581 (S.D.N.Y. 2022) ........................................................................... 11

*ITC Ltd. v. Punchgini, Inc.*,
  482 F.2d 135 (2d Cir. 2007) ......................................................................................... 12

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
  645 F. Supp. 3d 185 (S.D.N.Y. 2022) ............................................................................. 5

*King v. Innovation Books*,
  976 F.2d 824 (2d Cir. 1992) ......................................................................................... 11

*Kraft General Foods, Inc. v. Allied Old English, Inc.*,
  831 F. Supp. 123 (S.D.N.Y. 1993) .................................................................................. 9

*Kuklachev v. Gelfman*,
  629 F. Supp. 2d 236 (E.D.N.Y. 2008) .......................................................................... 11

*Metrokane, Inc. v. The Wine Enthusiast*,
  160 F. Supp. 2d 633 (S.D.N.Y. 2009) ............................................................................. 2

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*,
  314 F.3d 62 (2d Cir. 2002) ............................................................................................. 9

*RiseandShine Corp. v. PepsiCo, Inc.*,
  41 F.4th 112 (2d Cir. 2022) ............................................................................................ 5

*Road Dawgs Motorcycle Club of the U.S., Inc. v. "Cuse" Rd. Dawgs, Inc.*,
  679 F. Supp. 2d 259 (N.D.N.Y. 2009) .......................................................................... 11

*Scarves by Vera, Inc. v. Todo Imports Ltd.*,
  544 F.2d 1167 (2d Cir. 1976) ......................................................................................... 3

*Shenzhen Miracle Laptop Bags Co. v. Castill*,
  2023 U.S. Dist. LEXIS 14405 (E.D.N.Y. Jan. 27, 2023) ............................................. 12

*USPTO v. Booking.com B.V.*,
  591 U.S. 549 (2020) ........................................................................................................ 5

**Statutes**

15 U.S.C. § 1116 ................................................................................................................................9

**Other Authorities**

MCCARTHY at § 29:1 (5th ed.) ........................................................................................................12

MCCARTHY ON TRADEMARKS § 11:89 ..............................................................................................3

**INTRODUCTION**

Defendants' Opposition is riddled with unpersuasive defenses in an attempt to distract from their glaring infringement. But the evidence is clear. As soon as Defendants drastically shifted their business model in May 2025 to focus on the U.S. market, Defendants' WILDRIDE mark for baby and toddler carriers caused actual confusion with Plaintiff's senior WILDBIRD brand of baby and toddler carriers. Defendants' infringement creates a presumption of irreparable harm and Defendants offer no evidence to rebut it. Moreover, Plaintiff is at risk of current and future harm, as evidenced by the many instances of actual confusion—including an additional instance just yesterday—that have already occurred due to Defendants' increasing encroachment on Plaintiff's trademark rights in the U.S. Plaintiff's Motion should be granted.

**LEGAL ARGUMENT**

**I.      Plaintiff Established a Likelihood of Success on the Merits.**

As set forth below, Plaintiff has met its burden of demonstrating a likelihood of success on the merits of its claims, which have two elements: (i) trademark ownership and validity and (ii) likelihood of confusion. (*See* Opening Br. at 11) (discussing elements of claims).

    **A.      Plaintiff's WILDBIRD Marks Are Valid and Strong.**

        1.      Plaintiff's Marks Are Inherently Distinctive.

Plaintiff's WILDBIRD marks are valid because Plaintiff owns a federal trademark registration for its WILDBIRD word mark and its WILDBIRD logo is inherently distinctive. (*See* Opening Br. at 11-13.) Defendants do not dispute this.

        2.      Plaintiff's Marks Have Acquired Distinctiveness.

***Length and Exclusivity of Use.*** Defendants do not dispute that Plaintiff has used the WILDBIRD mark exclusively with baby carriers and toddler carriers for more than a decade. Instead, Defendants seek to downplay the commercial strength that Plaintiff's WILDBIRD marks

have garnered since 2014 by arguing that Plaintiff's marks are two of many "wild"-formative marks. Defendants are wrong. The evidence confirms there are only two brands of carriers for babies and toddlers in the U.S. that have "wild" in their marks: Plaintiff's WILDBIRD and Defendants' WILDRIDE—and Defendants' brand only recently expanded within the U.S.

***Advertising Spend and Sales Success.*** As stated in Plaintiff's Opening Brief, Plaintiff has invested heavily in marketing and promoting its WILDBIRD marks with much success in the U.S. Since 2017, Plaintiff has spent more than [REDACTED] promoting the WILDBIRD brand, and since its first use in 2014, has sold nearly [REDACTED] worth of WILDBIRD-branded products. (*See* DX25 [Dkt 053-7].) Courts routinely find such significant advertising spend and sales success indicative of secondary meaning. *See* Opening Br. at 15-6 (collecting cases); *see also*, *e.g.*, *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 640 (S.D.N.Y. 2009) ($3 million in sales an "indisputable sales success."). Defendants argue that Plaintiff's sales success does not indicate secondary meaning because it allegedly occurred primarily in the last two years "well after Defendants had already established a foothold in the United States." Yet Defendants did not have a "foothold" in the U.S. until *after* December 2024.

***Consumer Studies.*** Contrary to Defendants' distorted statement of the facts, Plaintiff's 2024 WildBird Market Exploratory Report supports a finding of secondary meaning. The report found that 72% of frequent users and 58% of occasional users of wearable baby carriers - Plaintiff's target consumer group - recognize the WILDBIRD brand. (DX 11 at 57 [ECF 053-4].)However, even 25% of non-owners - those who do not use a baby carrier – were familiar with the WILDBIRD brand. (*Id.*) Such high levels of consumer recognition support secondary meaning.

***Unsolicited Media Coverage.*** Plaintiff's WILDBIRD-brand baby carriers have been covered nearly a hundred times in unsolicited media articles touting the brand as one of the "best."

2

(*See* Declaration of Molly R. Littman ("Littman-Johnson Decl.") Ex. 1.) Plaintiff's WILDBIRD carriers have also received numerous awards, such as "best new baby carrier," in publications like Parents Guide and The Bump. (Littman-Johnson Decl., Ex. 2, Gunn Dep. Tr. 258:8-17.) ███

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ *See* Littman-Johnson Decl., Ex. 1.)

**Attempts to Plagiarize.** In 2015, Plaintiff successfully protested the only other company that attempted to enter the carrier industry with a "wild"-formative brand name. (Littman-Johnson Decl., Ex. 2, Gunn Dep. 271-273.) Plaintiff also successfully stopped a third party unlawfully impersonating Plaintiff and its WILDBIRD-brand products. (*Id.*)

3. There Is No Crowded Field

Defendants' argument that Plaintiff's marks are weak because of a purported "crowded field" fails for several reasons. First, "[t]he significance of third-party trademarks depends wholly on their usage," including whether the third-party marks are used on the same goods as the trademark owner. *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976). Defendants have not identified a single third party using a trademark containing the word "wild" *with baby or toddler carriers*. The only companies using "wild" for baby and toddler carriers are Plaintiff and Defendant.

Second, Defendants rely primarily on third-party registrations and applications, which, likewise, do not establish a crowded field. *See Scarves by Vera*, 544 F.2d at 1173 (finding third-party applications and registrations irrelevant because they provided "no evidence that the[] trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers"); *see also* MCCARTHY ON TRADEMARKS § 11:89 ("[N]early all courts

3

agree" that "[t]he citation of third party registration is not proof of third party uses for the purpose of showing a crowded field and relative weakness of a mark."); *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 255 (S.D.N.Y. 1999) (finding no crowded field where evidence consisted of 250 applications and registrations for marks containing the word "bear" with clothing, but only seven were used on "parkas or jackets"). Defendants submit no evidence to show whether these alleged third party marks are in use or have achieved consumer recognition. Even if they did, a review of those results—and Defendants' printouts of third-party websites—reveals only two companies in the U.S. that advertise and sell baby and toddler carriers under a mark that includes "wild": Plaintiff and Defendants. There is no "crowded field." That consumers have confused Defendants with Plaintiff speaks to the strength of Plaintiff's brand and to the similarities in the parties' marks and products.

    **B.**    **Likelihood of Confusion**

Plaintiff noticed in July 2025 that, for the first time in its 11-year history, it was being mistaken for another brand on social media—*Defendants*' WILDRIDE brand. (*See* Opening Brief at 8-9 [ECF 9 at 13-14].) Since the filing of Plaintiff's Opening Brief, Plaintiff has learned of additional instances of actual confusion on social media, and encountered confusion at a Nordstrom store just yesterday, October 9, 2025. (*See* TRO at 9-10 [ECF 37 at 14-15] and Reply Gunn Decl. ¶¶ 4-12.) The fact that more actual confusion has occurred is not surprising. The evidence confirms that Plaintiff's WILDBIRD brand is strong; the parties' marks are nearly identical; and the parties' products fall into identical categories: carriers for babies and carriers for toddlers. This evidence -- and more – demonstrates that, without an injunction stopping Defendants' infringement, more confusion is likely to occur as Defendants continue the rapid expansion of their infringing WILDRIDE Marks in the U.S.

4

1. Plaintiff's WILDBIRD Marks Are Strong.

As discussed above and in Plaintiff's Opening Br. (at 14-16 [ECF 9 at 19-21]), its WILDBIRD Marks are conceptually and commercially strong.

2. The Parties' Marks Are Similar.

Well-settled trademark law dictates that the first word of a mark is what consumers remember. (*See* Plaintiff's Opening Brief at 16-17 [ECF 9 at 21-22].) Here, that is: wild vs. wild. None of Defendants' cases hold otherwise. In fact, these cases found only that a shared term is not probative of confusion if it is descriptive or generic. *See e.g. USPTO v. Booking.com B.V.*, 591 U.S. 549, 562 (2020) ("When a mark incorporates *generic or highly descriptive* components, consumers are less likely to think that other uses of the common element emanate from the mark's owner.") (emphasis added); *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 238 (S.D.N.Y. 2022) (finding mark "jackpot" descriptive). The "wild" portion of the parties' marks is not generic or descriptive – it does not say anything about the parties' carrier products, their intended purpose, function, use, or merit. To be sure, the PTO did not make Plaintiff disclaim the "wild" portion (or "bird") of its WILDBIRD mark. *Compare with RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 122-24 (2d Cir. 2022) (Defendants' case; finding shared term "rise" was descriptive where trademark owner admitted as such in USPTO filings).

Defendants try—and fail—to get around this well-settled principle by arguing that the relevant analysis is "bird" vs. "ride." This argument ignores a critical point: there is no evidence of consumers confusing Plaintiff's WILDBIRD brand with any brand that has "bird" or "ride" in its name—or any other company that has "wild" in its name, for that matter. Instead, Plaintiff is only aware of its WILDBIRD brand being confused with Defendants' WILDRIDE brand, which not only sounds like Plaintiff's brand but also includes products in the identical categories as Plaintiff's brand: carriers for babies and carriers for toddlers.

5

### 3. The Parties' Products Are Similar

Defendants' attempt to paint the parties' products as baby carriers (Plaintiff) versus toddler carriers (Defendant) fails. Since the founding of Plaintiff's WILDBIRD brand 11 years ago, it has used its WILDBIRD marks to advertise and sell carriers for babies and toddlers. (Littman-Johnson Decl., Ex. 2, Gunn Dep. Tr. at 69) (Plaintiff's first product – the sling – is for newborns through toddlerhood). Defendants also ignore that the parties, retailers, and consumers advertise and identify the parties' products as carriers for both babies and toddlers:

- In Defendants' applications to register the mark WILDRIDE with the USPTO, Defendants identified its goods as: "*baby* and children carriers worn on the body; pouch *baby* and infant carriers; *baby* and infant carriers worn on the body; sling bags for carrying *babies* and infants; slings for carrying *babies* and infants; [and] *baby* and infant carrying bags." (Dkt. 11, Exs. 2-3) (emphasis added);

- Both parties' carriers are offered in the "Baby Carriers" section of Nordstrom's website (Dkt. 39-4), and Defendants' carrier is in the baby section of Nordstrom's physical stores (Reply Gunn Decl. ¶¶ 4-10);

- Consumer reviews of both parties' carriers refer to them as "newborn to toddler" (Dkt. 39-5);

- Both parties advertise and sell carriers for toddlers on their websites (Dkts. 39-7 – 39-9);

- Plaintiff advertises and sells carriers for babies on its website (Dkt. 10, Ex. 1);

- Defendants' U.S. website describes its carrier as the "best *baby* carrier" (Dkt. 39-8 at 6);

- Defendants' U.S. website has an article that defines a toddler as 1 year of age or older (Dkt. 39-10);

- Defendants' U.S. website describes its carrier as "fit[ting] children from *9 months to 4 years*" (Dkt. 39-8 at 6);

- Defendants' advertise their carrier as being ASTM compliant, which is the safety standard for baby carriers (Littman-Johnson Decl., Ex. 3); and

- In May 2025, both parties attended the ABC Kids Expo - an exhibition "where leading brands showcase their newest collaboration and innovations in baby gear, toys, apparel, gifts, and more." (Dkt. 39-11).

At bottom, the parties offer carriers for babies and toddlers. The parties' products are, therefore, similar. Defendants' attempt to rely on Plaintiff's consumer research report as evidence that consumers do not recognize WILDRIDE as a brand of baby carrier is baseless. At the time the survey was conducted in April 2024, Defendants did not have an operational U.S. website or a presence in the U.S., and had only shipped a *de minimis* amount of WILDRIDE products into the U.S. from the Netherlands. (Dkt. 39-12 at 4-5, 39-13.)

    4.    <u>Actual Confusion is Increasingly Occurring—Including Yesterday</u>

As discussed in Plaintiff's Opening Brief (at 19-20 [Dkt. 9 at 24-25]), it does not have to have evidence of actual confusion to prove an overall likelihood of confusion. This is particularly true where, like here, a Defendant's use of its mark has been relatively short-lived creating few opportunities for actual confusion to occur, much less for the Plaintiff to become aware of those instances of confusion. Yet Plaintiff *is* aware of actual confusion occurring—at an increasing rate—since the rapid expansion of Defendants' infringing WILDRIDE marks in the U.S. in May 2025.

7

At the buyer level, actual confusion occurred immediately at the ABC Kids Expo in May 2025, followed by additional confusion at a buyer showcase at Nordstrom in June 2025, and a still further instance of confusion at a Nordstrom store in California on October 9, 2025, where a Sales Associate confused the parties' brands and remarked that Defendants' WILDRIDE mark seemed "oddly similar" to Plaintiff's WILDBIRD mark. (*See* Reply Gunn Decl., ¶¶ 4-12.)

At the consumer level, actual confusion began occurring in July 2025 and has increased each month since. This actual confusion has occurred despite only one retailer—*i.e.*, Nordstrom—advertising and selling the parties' products. It follows, then, that even more confusion will occur as Defendants continue the rapid expansion of the use of their infringing WILDRIDE marks in the U.S., including, for example, at Target, which is one of the nation's largest retailers and where Plaintiff has been advertising and selling its WILDBIRD products for half a decade.

Defendants argue the evidence is *de minimis* and unreliable. But Defendants' argument misses the point: leaving aside that Plaintiff does not need evidence of actual confusion to prevail, the fact that Plaintiff has such evidence at this early stage of the case and the early stages of Defendants' rapid expansion within the U.S. forecasts that confusion is likely to continue to occur—and at an increasing rate, as demonstrated since the filing of this lawsuit when only a single retailer carried both parties' products.

### 5. Bad Faith, Quality Issues, and Consumer Sophistication

For each of the reasons stated in Plaintiff's Opening Brief (at 20-22 [ECF 9 at 25-27]), these factors weigh in favor of likelihood of confusion.

Based on the foregoing, and Plaintiff's Opening Brief, Plaintiff has established a likelihood of success on the merits of its claims[1].

---

[1] Defendants' argument that Plaintiff is not likely to succeed on its GBL 360-*l* claim for dilution is a red herring. Plaintiff need only establish—and has established—a likelihood of success on

8

**II.     Irreparable Harm**

Plaintiff established a rebuttable presumption of irreparable harm by establishing a likelihood of success on the merits of its claims. *See* 15 U.S.C. § 1116. Plaintiff also proved irreparable harm through the Declaration of Nathan Gunn filed with Plaintiff's Opening Brief. (*See also* Reply Gunn. Decl., ¶¶ 13-15.) Defendants' Opposition fails to rebut either showing.

        1.     Plaintiff Diligently Filed This Motion.

Defendants claim that Plaintiff waited too long to seek this Preliminary Injunction. Defendants are not correct. The evidence confirms that Defendants progressively encroached on Plaintiff's trademark rights in the U.S.—and Plaintiff acted diligently after discovering that encroachment in May 2025.

The doctrine of progressive encroachment "allows a plaintiff some latitude in the timing of its bringing suit, permitting it to wait until the likelihood of confusion looms large." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002).  Put another way, progressive encroachment asks whether the defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks. *Id.*  This is exactly what Defendants did in the United States:

- From Defendants' founding in the Netherlands in 2021 until December 2024, Defendants did not have a U.S. website; instead, they sold a *de minimis* number of products off their Netherlands-based website and shipped them to the U.S. from the

---

one of its claims to prevail. *See* Opening Br. at 11 (citing case).  Defendants also cite the wrong standard: unlike a dilution claim under Section 43(c) of the Lanham Act, a claim under GBL 360-*l* requires trademark distinctiveness (Plaintiff's marks are; *see discussion supra*), not fame. *See Kraft General Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 134 (S.D.N.Y. 1993).

    Netherlands (Littman-Johnson Decl., Ex. 4; Dep. Tr. 27:25-33:7, 60:21-64:21, 66-76 and Dep. Exs. 3-4, 10-13);

- The first sale of a WILDRIDE-branded product from a U.S.-based retailer allegedly occurred at a small, unknown retail store somewhere in Texas in late-2024 (*Id.*, Ex. 4 at 56:10-57:5);

- Defendants maintained consistent advertising spending from 2021-2024 and then increased their U.S.-based advertising in 2025 (*Id.*, Ex. 4 at 85:22-89:6);

- Defendants hired a U.S.-based distributor for the first time in May 2025 (*Id.*, Ex.4 at 53:23-55:6);

- The first sale of a WILDRIDE-branded product on a third-party website occurred in the U.S. in May 2025 (*Id.*, Ex. 4 at 52-57:5); and

- Defendants attended their first trade show in the U.S. in May 2025 (*Id.*, Ex. 4 at 90-91; *see also* ECF 39-11).

    Accordingly, Plaintiff did not have a "provable infringement claim" against Defendant until at least May 2025, which is when Plaintiff discovered for the first time that Defendants were actively promoting their WILDRIDE brand within the United States. Specifically, Plaintiff encountered Defendants at the ABC Kids Expo in Las Vegas, Nevada in May 2025. This encounter also was the first time that Plaintiff was aware of Defendants' WILDRIDE brand causing actual confusion with Plaintiff's WILDBIRD brand.

    As Plaintiff diligently investigated this newly discovered expansion of Defendants' WILDRIDE brand in the United States, Plaintiff encountered additional instances of actual confusion at the buyer level and on social media; attempted to resolve this dispute with Defendants; and filed this motion approximately eight weeks after the ABC Kids Expo. (*See* Dkt. 10, ¶¶ 19-

27.) In short, Plaintiff timely filed its preliminary-injunction motion. *Accord Girl Scouts of Am. v. Boy Scouts of Am.*, 597 F. Supp. 3d 581, 607-07 (S.D.N.Y. 2022) (denying motion for summary judgment on laches under progressive encroachment theory where plaintiff was not aware of any confusion or dilution until defendant "redirected its business" to allow girls into program); *Road Dawgs Motorcycle Club of the U.S., Inc. v. "Cuse" Rd. Dawgs, Inc.*, 679 F. Supp. 2d 259, 282-83 (N.D.N.Y. 2009) (finding progressive encroachment where actual confusion exponentially increased before plaintiff filed suit); *Kuklachev v. Gelfman*, 629 F. Supp. 2d 236, 250 (E.D.N.Y. 2008) ("The presumption [of irreparable harm] remains in cases where the plaintiff was . . . actively pursuing its rights"); *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (eight month delay in seeking injunction was excusable where the plaintiff contacted the defendant to resolve the dispute); *Clifford Ross Co. v. Nelvana, Ltd.*, 710 F. Supp. 517, 521 (S.D.N.Y. 1989) (seven month delay not unreasonable when time involved constructive effort to resolve the dispute without litigation).

### III. Balance of Equities

Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. (*See* Opening Br. at 22-24 [Dkt. 9 at 27-29].) As Plaintiff discussed in its opening brief, Defendants could still advertise and sell all their products in the U.S. if the Court enters a preliminary injunction—just not under the infringing WILDRIDE marks. Not infringing is not a "hardship." *See Celine S.A. v. Hongkong SSBUY E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474, at *8-9 (N.D.N.Y. Oct. 30, 2024) ("[T]he law does not protest the hardship arising from the loss of the change to promote infringing products."). Moreover, Defendants' argument that a preliminary injunction would "significantly complicate Defendants' ability to use its mark abroad" is a red herring. Trademark rights are territorial and, as such, the use of Defendants' mark outside of the U.S. is irrelevant to whether the use of Defendants' mark *in* the U.S. infringes Plaintiff's U.S.-

11

based trademark rights (it does). *See* MCCARTHY at § 29:1 (5th ed.) ("Under the territoriality doctrine, a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark. . . .) (quoting *ITC Ltd. v. Punchgini, Inc.*, 482 F.2d 135, 155 (2d Cir. 2007)).

### IV.     Public Interest

Defendants' Opposition fails to identify any reason for deviating from the well-settled law of this Circuit that the public has an interest in being free of confusion, which has increased since the filing of Plaintiff's Motion and will increase as Defendants continue rapidly expanding their use of the infringing WILDRIDE marks in the U.S.

### V.     This Court Should Waive Bond Requirement.

Defendants have failed to identify "any damages or costs that [they] will suffer as a result of the injunction." *Shenzhen Miracle Laptop Bags Co. v. Castill*, 2023 U.S. Dist. LEXIS 14405, at *15-16 (E.D.N.Y. Jan. 27, 2023) (waiving bond where defendant failed to identify damages or costs they will suffer if wrongfully enjoined); *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 470 (S.D.N.Y. 2019) (same). Accordingly, the Court, in its discretion, should waive the bond requirement.

## **CONCLUSION**

For each of the reasons cited in Plaintiff's Opening Brief and herein, the Court should grant Plaintiff's Motion for a Preliminary Injunction.


Dated: October 10, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Molly R. Littman-Johnson*
Jonathan W. Thomas (JT1016)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9219
Email: jonathan.thomas@gtlaw.com

Molly R. Littman-Johnson (*pro hac vice*)
90 South 7th St., Suite 3500
Minneapolis, Minnesota 55402
Tel: (612) 259-9669
Fax: (612) 259-9700
Email: Molly.Littman@gtlaw.com

*Attorneys for Plaintiff Wildbird LLC*

## **LOCAL RULE 7.1(C) CERTIFICATION**

The undersigned certifies that the foregoing document was prepared using Microsoft Word on a computer.  According to the word-count feature in Microsoft Word, the foregoing document contains 3,499 words, which is less than 3,500-word maximum under Local Rule 7.1(c).

*/s/ Molly R. Littman-Johnson*
Molly R. Littman Johnson

*Attorney for Plaintiff Wildbird LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 10, 2025, a true and correct copy of this document was filed using this Court's ECF System, which will send electronic notice of such filing to Defendants' counsel of record in this lawsuit.

*/s/ Molly R. Littman-Johnson*
Molly R. Littman Johnson

*Attorney for Plaintiff Wildbird LLC*