# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILDBIRD LLC,<br><br>    *Plaintiff*,<br><br>    v.<br><br>WILDRIDE B.V., and WILDRIDE USA CORP.,<br><br>    *Defendants*. | Civil Action No: 1:25-cv-05993 |

**DECLARATION OF NATE GUNN IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

I, Nate Gunn, hereby declare as follows:

1.      I am a resident of the State of California; over the age of 18; and competent to make this declaration.

2.      I am the co-founder of Wildbird LLC ("Wildbird"), which is the Plaintiff in this lawsuit.  I previously submitted a declaration in this lawsuit in support of Wildbird's motion for a preliminary injunction against Wildride B.V., and Wildride U.S.A. Corp. (together, "Defendants") on July 22, 2025.  I submit this declaration in support of Wildbird's motion for a temporary restraining order against the Defendants.

3.      I could and would testify about the matters set forth in this declaration.  The bases of my knowledge of the matters set forth in this declaration are: (i) my job responsibilities at Wildbird; (ii) my knowledge of Wildbird's founding; (iii) my knowledge of Wildbird's trademarks; (iv) my knowledge of Wildbird's business operations, including its current and anticipated products, its sales and advertising history, and its customers; and (v) my investigation of the use of Defendants' trademarks in the United States.

4.      As of July 22, 2025, Wildbird was aware of only one retailer—*i.e.*, Nordstrom—in the United States that advertises and sells both our WILDBIRD-branded carriers and Defendants' WILDRIDE-branded carrier.

ACTIVE 714801072v1

5.      As stated in my July 22, 2025, declaration, Wildbird sells its products on Target.com and has since at least as early as late-2020.  Wildbird will begin selling its products in Target's stores in 2026.

6.      In the evening of September 17, 2025, I was informed by a third party at Keystone Partners (which represents Wildbird's interests at Target) that Defendants intend to advertise and sell their WILDRIDE-branded carriers at Target stores in the United States.   This was the first time that I learned Defendants intend to expand their operations within the United States beyond their U.S. website and Nordstrom's website, in general, and to include Target's stores, specifically.

7.      Defendants' expanding their WILDRIDE brand in the United States to include Target—and any other third-party retailer—will irreparably harm our WILDBIRD brand.

8.      Since Wildbird's founding in 2014, we have advertised our carrier products as being carriers for babies and carriers for toddlers.    Until May 2025, Wildbird was not aware of any other company or brand that advertised or sold carrier products—whether for babies, toddlers, or otherwise—within the United States under a brand name or a mark that included the word "wild."

9.      As stated in my July 22, 2025 declaration, May 2025 was the first time that Wildbird learned that Defendants were using their WILDRIDE mark within the United States in connection with carrier products.    Since May 2025, Wildbird is aware of numerous instances of actual confusion between our brand and Defendants' WILDRIDE brand.    In particular, Wildbird began to notice for the first time in July 2025 that consumers were mistakenly tagging our "@wildbird" account on Instagram to mistakenly

3

identify Defendants' WILDRIDE-brand carrier in the posts. July 2025 also was when Nordstrom began advertising and selling both parties' carrier products, which Nordstrom advertises on its website in the United States in the same category: "Baby Carriers." Because actual confusion has occurred when only a single retailer in the United States advertises and sells both WILDBIRD-branded and WILDRIDE-branded carriers, Wildbird respectfully submits that even more confusion is likely to occur if Defendants expand their operations in the United States to include the advertising and sale of their WILDRIDE-branded carrier at a *second*, national retailer that also sells WILDBIRD-brand products—*i.e.*, Target—or at any other third-party retailer or any third-party website. This is particularly true, I believe, because the WILDBIRD brand has an established presence at Target dating back to late-2020.

**10.** As stated in my July 22, 2025 declaration, we, at Wildbird, have no association with or connection to Defendants or their Wildride brand. We also have no ability to control Defendants' use of their WILDRIDE trademark or the quality of products and services offered under Defendants' WILDRIDE trademark, including if Defendants' carriers appear in Target's stores or any other third-party retailer's locations or website. This jeopardizes the reputation and goodwill of our Wildbird brand and trademarks that we have spent more than a decade carefully curating. No amount of money could—or will—repair the damage to our Wildbird brand and trademarks' reputation and goodwill if consumers continue confusing and associating our brand with Defendants' Wildride brand and its products. Associating our brand with a brand that we cannot control places our brand and trademarks' carefully curated reputation and goodwill in someone else's

4

hands. With all due respect to Defendants, they should not have any control over the reputation and goodwill of our brand or trademarks; we should.

Pursuant to 28 U.S.C. § 1726(2), I declare under penalty of perjury that the foregoing is true and correct. Executed on this 19th day of September 2025.

_____
Nate Gunn

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on September 19, 2025, I served a true and correct copy of the foregoing document on the following counsel of record for Defendants via ECF and electronic mail:

Leo M. Lichtman
James M. Slater
ESCA LEGAL
Leo@esca.legal
James@esca.legal
1177 6th Avenue, 5th Floor
New York, New York 10036


Jonathan W. Thomas

*Attorney for Plaintiff*